# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Geiger*, 2012 IL 113181

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TERRELL D. GEIGER, Appellant. |
| Docket No. | 113181 |
| Filed | October 18, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a witness conceded that he had been guilty of direct criminal contempt in refusing to testify based on his honest but mistaken belief that he had a fifth amendment privilege, a 20-year term was manifestly disproportionate and unreasonably excessive—cause remanded to give the circuit court an opportunity to impose a more reasonable sentence. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Kankakee County, the Hon. Clark E. Erickson, Judge, presiding |
| Judgment | Appellate court judgment reversed.<br>Cause remanded for resentencing. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Peter A. Carusona and Thomas A. Lilien, Deputy Defenders, and Fletcher P. Hamill, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Michael M. Glick and Karl R. Triebel, Assistant Attorneys General, of Chicago, of counsel), for the People.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Thomas, Garman, Karmeier, and Theis concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion.

Chief Justice Kilbride dissented, with opinion.


**OPINION**

¶ 1    After a bench trial, defendant, Terrell Geiger (Geiger), was found guilty of direct criminal contempt for refusing to testify as a State's witness at the murder trial of Javar Hollins. The court imposed a sentence of 20 years' imprisonment. Defendant appealed his sentence to the appellate court, which affirmed with one justice dissenting. 2011 IL App (3d) 090688.

¶ 2    We granted defendant's petition for leave to appeal in this court (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)) and now reverse the sentence imposed. We find that the 20-year sentence imposed is grossly disproportionate to the nature of the offense and must be reduced.


¶ 3                                   BACKGROUND

¶ 4    In November 2008, Javar Hollins was retried[1] for the 1999 murders of Lazerick (L.Z.) Martin and Michael Cox. Although defendant had not testified at Hollins' first trial, he had testified for the State at the trial of Hollins' codefendant, Joseph Mason. When defendant testified at Mason's trial, he was 15 years old and was a member of the same gang as Hollins and Mason. At Mason's trial, defendant testified that on March 18, 1999, he was at the Avis Motel in Kankakee, where he overheard Hollins, Mason and Dana Dixon planning to rob L.Z. Martin. Defendant also testified that the three men left the motel and, when they returned a short time later, Hollins bragged about shooting Martin in the head. Defendant

---

[1]Hollins' previous conviction was overturned on appeal due to a jury selection issue. See *People v. Hollins*, 366 Ill. App. 3d 533 (2006).

-2-

admitted that, after Hollins and the others returned, he accompanied Hollins and another person (Taylor) to recover the weapons that had been stashed after the robbery, but left before the others disposed of the guns.

¶ 5 On Friday, November 21, 2008, at Hollins' retrial, defendant was brought into court outside the presence of the jury. The prosecutor informed the court that, although he had previously been cooperative, defendant now indicated that he would not testify. The court questioned defendant, who told the court he was refusing to testify because he believed it was his fifth amendment right to do so.

¶ 6 The court advised defendant that, because he had given a statement to the police and had previously testified in the Mason trial, he had no reasonable basis for invoking the fifth amendment privilege at that time. The court further advised him that if he persisted in his refusal to testify and was found in contempt without a trial, he could be sentenced to up to 180 days in jail. However, if the prosecutor filed a formal direct criminal contempt petition against him and he was found in contempt after a trial, he could face "a period of years imprisonment to run consecutive, not concurrent, consecutive to the sentence you are currently serving."

¶ 7 At the court's direction, the jury was brought back into the courtroom and the prosecutor called defendant to the stand. The prosecutor questioned defendant, who confirmed that on March 18, 1999, he had been present at the Avis Motel. However, defendant refused to answer any further questions by the prosecutor, asserting his fifth amendment privilege against self-incrimination. A recess was taken and the jury was dismissed for lunch.

¶ 8 After the lunch recess, the prosecutor filed with the court a criminal contempt petition against defendant, as the court had discussed. Hoping that defendant could be persuaded to testify before the Hollins trial ended, the prosecutor asked the court to appoint Public Defender Gus Regas, who had come to court to represent defendant and advise him regarding his decision on whether to testify. As further incentive, the prosecutor informed the court that he had been authorized to offer defendant use immunity in exchange for his truthful testimony in the Hollins case.

¶ 9 Defendant was brought back into the courtroom and the court advised him that Regas, who was present in the courtroom, had been appointed to represent him. The court also advised defendant that the prosecutor was offering him use immunity in exchange for his truthful testimony in the Hollins trial. Finally, the court read the petition charging defendant with direct criminal contempt, in which the prosecutor asked for a sentence of 20 years' imprisonment if defendant were found in contempt.

¶ 10 After these admonishments, the court asked defendant if he wished to enter a plea on the contempt petition at that time. The public defender asked the court for a brief recess to allow him time to confer with defendant. The court granted the request. About an hour later, court came back into session and, without the jury present, defendant was called to the stand. However, the court did not ask defendant if, after speaking with his attorney, he still refused to testify. In fact, defendant was asked no questions at all. Instead, the court noted on the record that defendant's counsel had left the building and then ordered the contempt case against defendant to be held over to Tuesday, November 25, 2008, for a plea hearing.

¶ 11 On Monday, November 24, 2008, Hollins' trial was completed. Hollins was found guilty

of murder and later sentenced to life imprisonment. His conviction and sentence were upheld on appeal. *People v. Hollins*, No. 3-09-0126 (2011) (unpublished order under Supreme Court Rule 23).

¶ 12      On November 25, 2008, defendant entered a plea of not guilty on the contempt petition. He denied the allegations, asserting that he had a valid fifth amendment right to refuse to testify, and moved for the petition to be dismissed. The matter was continued.

¶ 13      The motion to dismiss the petition was denied by the court on March 5, 2009, and the case proceeded to a bench trial on June 1, 2009. At trial, defendant's counsel argued that defendant had a fifth amendment right to refuse to testify and that the trial court had erred when it ordered defendant to testify without holding a full hearing to determine whether defendant had good cause to believe that his testimony could be used against him. The court rejected defense counsel's argument, finding once again that defendant did not have the right to refuse to testify. After reviewing the transcript of defendant's refusal to testify at Hollins' trial on November 21, 2008, as well as the court's own recollection of the events, the court found defendant guilty of direct criminal contempt for refusing to testify.

¶ 14      At the sentencing hearing on July 20, 2009, defense counsel first argued a motion for new trial. Counsel informed the court that, while it was true that defendant had previously testified in the Mason trial, that fact was not dispositive of his right to invoke the fifth amendment. Counsel pointed out that defendant had been a juvenile when he testified at the Mason trial. According to counsel, defendant's refusal to testify at Hollins' retrial in 2008 was based on the fact that he was an adult and believed that he could face more serious consequences if he were to testify. The court denied the motion for new trial and sentenced defendant to 20 years' imprisonment with the sentence to run consecutively to a previously imposed six-year sentence on an unrelated matter, which defendant was already serving.[2]

¶ 15      Defendant appealed. While conceding that he had committed direct criminal contempt, defendant argued that his sentence was excessive and grossly disproportionate to the nature of the offense. The appellate court affirmed, with one justice dissenting. 2011 IL App (3d) 090688.

¶ 16      We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 17                             ANALYSIS

¶ 18      As in the appellate court, defendant does not challenge his conviction for direct criminal contempt. He concedes that he was mistaken in his belief that he had a fifth amendment right to refuse to testify. The only issue before us is whether the trial court abused its discretion when it imposed a sentence of 20 years' imprisonment for defendant's direct criminal contempt.

¶ 19      The State urges us to find, as the appellate court did, that the trial court did not abuse its discretion by imposing the 20-year sentence. The State argues that a substantial sentence is

---

[2]According to a document submitted to this court by defendant's attorney dated May 18, 2012, defendant has completed the sentence imposed on the prior, unrelated offense and has now served more than two years against his contempt sentence.

warranted here because defendant's disobedience offended the dignity of the court, as well as threatened the State's ability to hold Hollins accountable for a double murder. Further, the State asserts that a severe punishment is necessary because of defendant's criminal history and for general deterrence purposes—it serves as a warning to others. Thus, according to the State, the 20-year sentence is not greatly at variance with the spirit and purpose of the law and, therefore, the trial court did not abuse its discretion.

¶ 20 Defendant, however, contends that the 20-year sentence is grossly disproportionate to the nature of the offense and excessive, constituting an abuse of discretion. Although defendant refused to testify in a trial involving a double murder, he points out that, in *People v. Carradine*, 52 Ill. 2d 231, 234 (1972), this court affirmed a six-month contempt sentence for a defendant's refusal to testify at a murder trial.

¶ 21 In further support, defendant cites, *United States v. Gracia*, 755 F.2d 984 (2d Cir. 1985), *United States v. Gomez*, 553 F.2d 958 (5th Cir. 1977), and *United States v. Leyva*, 513 F.2d 774 (5th Cir. 1975). In each of these cases the defendant refused to testify at grand jury proceedings regarding matters involving attempted murder and other serious offenses. In each of these cases, the sentence imposed by the trial court was found to be excessive.

¶ 22 Moreover, in *Gracia*, *Gomez*, and *Leyva*, the courts, when determining a fair sentence, applied the principle of proportionality. In *Gracia* the court noted that had the defendant not refused to testify and, instead, committed the offense of perjury by testifying falsely, the maximum nonextended-term sentence to which he would have been exposed would be five years. The court explained:

> "We see nothing in [the defendant's] conduct before the grand jury that is worse than perjury, and are therefore unconvinced that a 'just deserts' rationale for punishing this defendant justifies a penalty that is substantially harsher than what he could have received for a perjury conviction. We also see no reason based on general deterrence to punish this defendant's silence more than perjury; indeed, since a perjurer may consciously mislead a court or grand jury, it would be anomalous to encourage those who would otherwise remain silent to choose, instead, to lie." *Gracia*, 755 F.2d at 990.

In *Gomez* and *Leyva*, the courts noted that if the defendants' conduct had been prosecuted as obstruction of justice, they would have been subject to sentences of no more than five years. Accordingly, in each of the cases cited, the reviewing court reduced the sentence imposed. See *Gracia*, 755 F.2d at 990 (nine-year contempt sentence reduced to four years); *Gomez*, 553 F.2d at 959 (15-year sentence reduced to 4 years); *Leyva*, 513 F.2d at 780 (35-year criminal contempt sentence reduced to 2 years).

¶ 23 In the case at bar, defendant contends that we should find his sentence excessive and that it must be reduced to a more just term, as in the cases above. We agree.

¶ 24 It has long been recognized that a court, in order to maintain control over its courtroom, has the inherent power to punish for contempt. See *People v. Simac*, 161 Ill. 2d 297, 305 (1994) (all courts have the inherent power to punish contempt; this power is essential to the maintenance of authority and the administration of judicial powers); 720 ILCS 5/1-3 (West 2008). Moreover, because the power to punish for contempt is inherent and does not depend on a constitutional or legislative grant, the legislature may not restrict its use. *Murneigh v.*

*Gainer*, 177 Ill. 2d 287, 303 (1997); *People v. Warren*, 173 Ill. 2d 348, 370 (1996); *In re G.B.*, 88 Ill. 2d 36, 41 (1981); *In re Baker*, 71 Ill. 2d 480, 484 (1978). Accordingly, contempt has no sentencing classification or sentencing range set by the legislature.

¶ 25    When imposing a sentence for contempt, courts should keep in mind that "[t]he contempt power is an extraordinary one that should be used sparingly and with the utmost sensitivity." See *In re G.B.*, 88 Ill. 2d at 52-53 (Simon, J., dissenting) (citing *Bloom v. Illinois*, 391 U.S. 194 (1968)); *City of Chicago v. Chicago Fire Fighters Union, Local No. 2*, 99 Ill. App. 3d 583, 590 (1981) (the power to punish for contempt is discretionary, but should be exercised sparingly and only when necessary to prevent actual, direct obstruction of justice).

¶ 26    In *People v. Ernest*, 141 Ill. 2d 412, 421 (1990), this court stated:

> "A court has the inherent power to punish, as contempt, conduct that is calculated to impede, embarrass, or obstruct the court in its administration of justice or derogate from the court's authority or dignity, or to bring the administration of the law into disrepute. (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 452.) A finding of criminal contempt is punitive in nature and is intended to vindicate the dignity and authority of the court. (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 409.) Nonetheless, 'its exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions.' *Cooke v. United States* (1925), 267 U.S. 517, 539, 69 L. Ed. 767, 775, 45 S. Ct. 390, 396."

See also *People v. Simac*, 161 Ill. 2d 297, 306 (1994) ("the exercise of such [contempt] power is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions" (internal quotation marks omitted)); *Id.* at 315 (Nickels, J., dissenting, joined by Harrison and McMorrow, JJ.) (the contempt power, while "universally recognized as essential to the administration of justice," is "susceptible to abuse and must be closely examined").

¶ 27    A sentence imposed for direct criminal contempt, like any other sentence, is subject to review for an abuse of discretion. See *People v. Alexander*, 239 Ill. 2d 205 (2010); *People v. Hauschild*, 226 Ill. 2d 63 (2007) (a reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court); *In re Estate of Wernick*, 176 Ill. App. 3d 153, 156 (1988) (the power to punish for contempt rests within the sound discretion of the trial court, and a determination of contempt will not be overturned absent a clear abuse of discretion). A sentence will be deemed an abuse of discretion where the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d at 212 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). In contempt cases, however, because there are no sentencing guidelines, appellate courts have a "special responsibility for determining that the [contempt] power is not abused, to be exercised if necessary by revising themselves the sentences imposed." *Green v. United States*, 356 U.S. 165, 188 (1958). See also *United States v. Bukowski*, 435 F.2d 1094, 1110 (7th Cir. 1970) ("Punishment of criminal contempt should reflect the 'least possible power adequate to the end proposed.' [Citation.] Appellate courts bear 'special responsibility' for preventing abuse of the contempt power, and this Court has the power in appropriate circumstances to revise sentences inflicted upon contemnors whether trial has been by judge or jury.").

¶ 28    In *United States v. United Mine Workers of America*, 330 U.S. 258, 302-03 (1947), the

United States Supreme Court listed certain factors that trial courts may consider when fashioning an appropriate sentence for criminal contempt: (1) the extent of the willful and deliberate defiance of the court's order, (2) the seriousness of the consequences of the contumacious behavior, (3) the necessity of effectively terminating the defendant's defiance as required by the public interest, and (4) the importance of deterring such acts in the future.

¶ 29    Applying the above principles to the case at bar, we find that the 20-year sentence imposed in this case is manifestly disproportionate to the nature of the offense and, therefore, unreasonably excessive. Although defendant willfully and deliberately refused to testify, his refusal was based on his mistaken belief that he had a fifth amendment right to do so. We note, too, that some evidence was presented at defendant's contempt trial that other gang members who had testified were threatened. Thus, defendant's refusal to testify might have been driven, in part, by the fact that, as a gang member, he feared retaliation.

¶ 30    It should also be recognized that defendant's refusal to testify did not seriously hamper the State's ability to prosecute Hollins. Defendant's testimony would have been cumulative to the testimony provided by other witnesses and Hollins was convicted without the additional evidence that defendant might have provided.

¶ 31    We realize that defendant continued to refuse to testify in a double-murder case after he was informed by the court that he had no right to refuse and was offered use immunity. In doing so, defendant exhibited a disregard for the authority of the court. However, defendant's contemptuous conduct was nonviolent and he was not flagrantly disrespectful to the trial judge. See *People v. Ziporyn*, 106 Ill. 2d 419, 422 (1985) (because contemnor's behavior was not "flagrantly contemptuous," a one-year sentence of probation was "unnecessary and excessive" and reduced to a $250 fine). Defendant simply refused to testify because he honestly believed he had a fifth amendment right to do so. Moreover, defendant's belief was not unreasonable, given the fact that his own attorney maintained throughout the contempt proceedings that defendant had a valid fifth amendment right to refuse to testify.

¶ 32    Under the circumstances presented in this case, we find that a less onerous sentence is in order. While it would not be inappropriate for this court to impose a new sentence, we choose to remand to the circuit court to afford it the opportunity to enter a more reasonable sentence.

¶ 33    Appellate court judgment reversed.

¶ 34    Cause remanded for resentencing.

¶ 35    JUSTICE FREEMAN, specially concurring:

¶ 36    I agree that defendant's 20-year sentence for direct criminal contempt is manifestly disproportionate to the nature of the offense, and that a less onerous sentence is in order. However, I disagree with the majority's decision to remand to the circuit court for that court to enter "a more reasonable sentence." *Supra* ¶ 32. This only guarantees another round of appeals; therefore, in the interest of preserving judicial resources, I believe the matter should be resolved here with this court imposing the new sentence. I would remand to the circuit

court with instructions that a sentence of time served be entered.

¶ 37   CHIEF JUSTICE KILBRIDE, dissenting:

¶ 38   I disagree with the majority's decision reversing defendant's sentence for direct criminal contempt. In my view, the trial judge did not abuse his discretion in imposing the sentence in this case. Accordingly, I respectfully dissent.

¶ 39   As the majority explains, the trial court's sentence is reviewed for an abuse of discretion. A reviewing court gives great deference to the trial court's sentence because the trial judge has observed the defendant and the proceedings and is in a far better position to consider the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age. *People v. Snyder*, 2011 IL 111382, ¶ 36; *People v. Streit*, 142 Ill. 2d 13, 18-19 (1991). A reviewing court should proceed with great caution and care in considering the propriety of a sentence. *Streit*, 142 Ill. 2d at 19. The reviewing court must not substitute its judgment for that of the sentencing judge merely because it would have weighed the factors differently. *Streit*, 142 Ill. 2d at 19.

¶ 40   In imposing an appropriate sentence for criminal contempt, the trial court may consider: (1) the extent of the willful and deliberate defiance of the court's order; (2) the seriousness of the consequences of the contempt; (3) the public interest in effectively terminating the defendant's defiance; and (4) the importance of deterring the contemptuous behavior in the future. *United States v. United Mine Workers of America*, 330 U.S. 258, 303 (1947). The nature of those sentencing factors requires placing great reliance upon the discretion of the trial judge. *United Mine Workers*, 330 U.S. at 303.

¶ 41   Here, the appellate court upheld the trial court's sentence. The appellate court observed that defendant's contemptuous conduct severely limited the evidence of Hollins' involvement in the planning and execution of the crimes and, therefore, hindered the administration of justice for two murders. The appellate court explained that giving defendant a light sentence would encourage future witnesses to refuse testifying in serious criminal cases. The trial judge specifically observed that defendant did not appear to have even an "inkling of concern" that he would be prosecuted for ignoring the court's order. The trial judge stated, "*I saw pure scorn for the judicial system in the defendant's face*." (Emphasis added.) The trial judge also commented on defendant's criminal history, including a Class 1 felony conviction for delivering a controlled substance near a park or school, a Class X felony conviction for manufacturing or delivering cocaine, two felony convictions from Wisconsin for manufacturing or delivering controlled substances, and a Class A misdemeanor conviction for obstructing a police officer. While defendant's contempt was not violent, the appellate court recognized it was nonetheless calculated to hinder or obstruct the administration of justice in a double murder trial. Given the totality of the circumstances, the appellate court concluded that the trial judge did not abuse his discretion in sentencing defendant.

¶ 42   I agree with the appellate court's analysis. The factors listed in *United Mine Workers* favor imposition of a substantial sentence. Defendant persisted in his refusal to testify at the double-murder trial after being given several opportunities to comply with the trial court's order. His defiance of the trial court's order was certainly willful and deliberate. The

potential consequences of the contempt could not be more serious given that it occurred during a double murder trial. The refusal to testify threatened to obstruct or impede the administration of justice for two violent crimes.

¶ 43    Importantly, the public interest in terminating the defiance and future deterrence both favor a substantial sentence. The trial court cannot perform its function of administering justice if witnesses to serious crimes are allowed simply to refuse to testify without facing significant punishment. The sentence here serves to deter witnesses to future serious crimes from willfully defying the authority of the court and, thereby, obstructing the administration of justice. Public safety is put at great risk if trial courts are not given adequate authority to deter the contemptuous refusal to testify at issue in this case.

¶ 44    In concluding that the trial court abused its discretion, the majority states defendant's refusal to testify may have been driven, in part, by a fear of retaliation. The majority also asserts defendant's conduct was not flagrantly disrespectful or contemptuous, but that he "simply refused to testify because he honestly believed he had a fifth amendment right to do so."

¶ 45    The majority's statements about the defendant's motivation for refusing to testify disregard the trial judge's specific findings on defendant's open contempt for the judicial system. Contrary to the majority's statements, the trial judge found defendant did not have an "inkling of concern" that he would be prosecuted for ignoring the order to testify. The trial judge "saw pure scorn for the judicial system in the defendant's face." The majority's statement that defendant was not flagrantly disrespectful is contradicted by the trial judge's finding that he exhibited "pure scorn" for the court system. The trial judge emphasized that defendant was defiant, expressly asserting, "I hope I've made the record abundantly clear that all that I saw in you was contempt on the day that you were called to the witness stand." The trial judge concluded, "if there's a case that's appropriate for 20 years for contempt, this is the case."

¶ 46    The trial judge's findings are directly relevant to the factors from *United Mine Workers* for imposing a sentence for direct criminal contempt. Those findings are entitled to great deference given the trial judge's ability to observe the defendant and the proceedings in this case. The trial judge was in a far better position to evaluate the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age. *Snyder*, 2011 IL 111382, ¶ 36; *Streit*, 142 Ill. 2d at 18-19. Notably, the majority does not recite any part of the trial judge's reasoning for imposing the sentence. The majority simply disregards the trial judge's reasoning and substitutes its own judgment for that of the trial court on the factors critical to imposing the sentence. This court, however, must not substitute its judgment for that of the trial judge merely because it would have weighed the factors differently. *Streit*, 142 Ill. 2d at 19.

¶ 47    In sum, the trial judge's sentencing decision is entitled to great deference. I believe the trial judge properly weighed the factors relevant to imposing the sentence for direct criminal contempt along with defendant's extensive criminal history. Based on the facts of this case, I agree with the appellate court that the trial judge did not abuse his discretion in imposing the sentence. Accordingly, I respectfully dissent.