# Illinois Official Reports

## Appellate Court

---

**People v. Geiger, 2015 IL App (3d) 130457**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRELL D. GEIGER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0457 |
| Filed | April 17, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 08-MR-518; the Hon. Clark E. Erickson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Fletcher P. Hamill, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Michael M. Glick and Joshua M. Schneider, Assistant Attorneys General, of counsel), for the People. |

Panel                   JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Lytton dissented, with opinion.

**OPINION**

¶ 1       The State prosecuted Terrell D. Geiger for direct criminal contempt for his refusal to testify against Javar Hollins during Hollins' 2008 retrial for charges arising out of two drug-related double homicides that occurred in March of 1999. The trial court found Geiger guilty of the offense of direct criminal contempt due to his refusal to testify against Hollins. The trial court sentenced Geiger to serve 20 years' imprisonment, but the supreme court reversed the sentence and remanded the matter to the trial court for resentencing. *People v. Geiger*, 2012 IL 113181. On remand, the trial court resentenced defendant to 10 years' imprisonment. Defendant now appeals the 10-year sentence on the grounds that the punishment was grossly disproportionate to the nature of the offense and asks this court to reduce the sentence to time served. We affirm.

¶ 2                                   FACTS

¶ 3       On March 18, 1999, police discovered the bodies of Lazerick Martin and Michael Cox. Both men had been fatally shot. Geiger, who was 15 years old at the time of the 1999 shootings, provided a statement to the police concerning the events that preceded the shootings. However, Geiger was not arrested or prosecuted for any offense directly related to the murders.

¶ 4       Instead, the State charged Dana Dixon, Joseph Mason, and Javar Hollins with offenses related to the March 18, 1999, shooting deaths. Over the course of many years, Dixon, Mason, and Hollins were convicted of criminal offenses related to the March 18, 1999, murders in proceedings conducted by Judge Clark Erickson. Judge Erickson sentenced Dixon, Mason, and Hollins separately for their roles in the double homicide.

¶ 5       Multiple appeals have resulted from Mason's and Hollins' convictions for murder and Geiger's related conviction for direct criminal contempt. The summary of facts below has been compiled by this court from both the record in this appeal, together with the summary of facts compiled by each reviewing court in the following appellate and supreme court decisions: *People v. Mason*, No. 3-00-0894 (2002) (unpublished order under Supreme Court Rule 23); *People v. Hollins*, 366 Ill. App. 3d 533 (2006); *People v. Hollins*, 2011 IL App (3d) 090126-U; *People v. Hollins*, 2014 IL App (3d) 120806-U; *People v. Geiger*, 2011 IL App (3d) 090688; and *People v. Geiger*, 2012 IL 113181.

¶ 6       Shortly after the homicides, both Geiger and Hollins gave statements to the police. The authorities interviewed Hollins before Geiger. Hollins was interviewed by the authorities on April 1, 1999, and again on April 2, 1999. During the first interview, Hollins told the police he was not involved in the shootings and that Mason, Dixon, and Geiger committed the crimes.

During the second interview, Hollins said he acted as a lookout while Mason, Dixon, and Geiger murdered the two victims.

¶ 7     A few days later after the police spoke to Hollins, the investigators questioned 15-year-old Geiger on April 8, 1999. Geiger's statement to the police in April of 1999 blamed Hollins for shooting both Martin and Cox. Geiger told the police that Hollins confessed to Geiger by admitting Hollins shot Martin in the leg. Geiger also told the police that Hollins admitted to Geiger that Hollins shot Cox with a pistol grip "Mosseberg" shotgun.[1] According to Geiger's statement, Hollins also told Geiger that Mason fired two shots into Martin's head on March 18, 1999.

¶ 8     Hollins was arraigned on his criminal charges on April 5, 1999. A few weeks later, Hollins initiated contact with the prosecutor, on May 22, 1999, by writing a letter to the prosecutor. Hollins' letter provided a third version that differed from his two previous statements to the police officers. In the letter, Hollins explained that *Mason* shot Martin both in the leg and head. Hollins also indicated in writing that both Mason and Dixon fired shots into the car where Cox was waiting.[2]

¶ 9                          I. Proceedings Related to the Murder Convictions
¶ 10                                      A. Dixon's Conviction
¶ 11    Dixon was the first of the three men to be convicted for his role in the double homicide. The State charged 19-year-old Dixon with four counts of murder and two counts of armed robbery for the March 18, 1999, shootings. However, Dixon entered a guilty plea to one count of murder before Judge Erickson on July 11, 2000. Judge Erickson sentenced Dixon to serve 23 years of incarceration.

¶ 12                                     B. Mason's Conviction
¶ 13    Joseph Mason was the second person to be convicted of offenses related to the double homicide. Judge Erickson presided over Mason's jury trial. During Mason's trial, which began on September 27, 2000, Geiger testified for the State. Geiger testified that a couple of hours after Hollins and Mason left a room at the Avis Motel on March 18, 1999, Hollins returned first, acting both excited and happy. According to Geiger's testimony, Mason returned to the same motel room a few minutes later acting normally. Geiger told the jury that, after returning to the motel room, Mason and Hollins went into the bathroom together. When both men emerged from the bathroom, Hollins said, "Let's go get the guns." Mason said, "Go get them." Consequently, Geiger left the motel room with Hollins and a person Geiger knew as "Terry." Geiger testified that Geiger accompanied Hollins and "Terry" to an address about five houses away from 203 South Elm. At that location, Geiger watched Hollins pick up a shotgun. Geiger testified that he personally picked up a handgun and then gave the handgun to "Terry."

---

[1]The police report used the "Mosseberg" spelling; however, the firearm manufacturer spelling of this shotgun is "Mossberg."

[2]The facts summarized by Justice O'Brien in this court's most recent decision involving Hollins' murder convictions (*Hollins*, 2014 IL App (3d) 120806-U) indicate Hollins learned about the details of the shooting from Geiger.

¶ 14      The State's witnesses who testified against Mason stated that Mason and others planned to commit an armed robbery of Lazerick Martin and Michael Cox because Mason had had drugs and $4,000 in cash stolen from him a few days before.[3] Judge Erickson presided over Mason's trial and sentencing hearing. Following Mason's conviction, Judge Erickson ordered Mason to serve a life sentence.

¶ 15                             C. Hollins' First Trial

¶ 16      The third person found guilty of offenses related to the murders of Martin and Cox was Javar Hollins. Hollins' first jury trial began on April 29, 2004, with Judge Erickson presiding. Geiger did not testify during this trial. The jury found Hollins guilty, but these convictions were set aside due to problems with the jury venire and this court remanded the matter for a new trial in 2006. See *Hollins*, 366 Ill. App. 3d 533.

¶ 17                        II. Proceedings Involving Geiger

¶ 18      After our court's 2006 decision reversing Hollins' conviction and remanding the matter for a new trial for Hollins, the State arrested and charged Geiger with the Class X felony offense of delivery of cocaine, committed on June 20, 2007, in Kankakee County case, People v. Geiger, case No. 07-CF-385. On July 18, 2007, Judge Erickson sentenced Geiger to serve six years' incarceration for this Class X felony offense. Consequently, when Hollins' second murder trial commenced in 2008, Geiger was serving the six-year sentence imposed by Judge Erickson in case No. 07-CF-385.

¶ 19                           A. Hollins' Second Trial

¶ 20      Once again, Judge Erickson presided over Hollins' second jury trial, which began in November 2008, nine years after the murders. This time, the State subpoenaed Geiger to testify before the jury as a State witness against Hollins. However, once in court, Geiger informed Judge Erickson that Geiger was asserting his fifth amendment privilege against self-incrimination. On this basis, Geiger refused to testify against Hollins. Judge Erickson advised Geiger at that time that Geiger's testimony was no longer privileged under the fifth amendment because he gave statements to the police and previously testified at Mason's trial. The trial court further admonished Geiger that he could be charged with a direct criminal contempt charge and, if found guilty, be sentenced to serve several years in prison on that charge. After a lunch recess, the State filed criminal contempt charges and also offered Geiger immunity for his testimony, so nothing Geiger testified about could be used against him. However, Geiger still refused to testify against Hollins.

¶ 21      Hollins testified in his own defense and recanted the substance of his April 2, 1999, statement to the police and his May 22, 1999, letter to the prosecutor. Hollins testified that the first statement he provided to police on April 1, 1999, indicating Hollins was not present when Geiger, Mason, and Dixon participated in the murders, was the truthful version of the events.

---

[3]During Hollins' April 1, 1999, statement to police officers, Hollins said some drugs and money were stolen from *Dixon's* room shortly before March 18, 1999. However, during Mason's trial, Geiger said Mason told him someone stole the drugs and money from *Mason*.

Following Hollins' second jury trial, the jury found Hollins guilty on all counts. Judge Erickson sentenced Hollins to serve life without parole.

¶ 22                              B. Geiger's Contempt Proceedings

¶ 23    During a recess in Hollins' second trial, the State formally charged Geiger with direct criminal contempt and Geiger still refused to testify. Approximately six weeks after Hollins' trial, Judge Erickson presided over Geiger's criminal contempt proceedings. At the contempt bench trial, defense counsel argued that defendant had a fifth amendment right to refuse to testify. The court rejected this argument and found defendant guilty of direct criminal contempt, set the matter for a sentencing hearing, and ordered a presentence investigation. At the first sentencing hearing, the trial court noted that defendant seemed defiant when he refused to testify and that defendant did not seem afraid of retaliation for his testimony. Based on those factors and defendant's criminal history, on July 20, 2009, the court imposed a sentence of 20 years' incarceration. The court ordered the sentence to be served consecutively with a six-year sentence already being served by Geiger for an unrelated drug offense, People v. Geiger, case No. 07-CF-385.

¶ 24    On appeal, this court affirmed defendant's 20-year sentence. *Geiger*, 2011 IL App (3d) 090688. The supreme court granted leave to appeal and found that a less onerous sentence was required and remanded the case to the trial court for resentencing. *Geiger*, 2012 IL 113181.

¶ 25    The record in this appeal reveals, on April 15, 2013, the case was called for resentencing before Judge Erickson following remand. The State argued that a 10-year sentence was appropriate, given the seriousness of the underlying case in which defendant refused to testify and defendant's defiance.

¶ 26    Defense counsel argued defendant's refusal to testify against Hollins was based solely on Geiger's mistaken, but reasonable, belief that he had a fifth amendment privilege to remain silent. Further, defense counsel stressed that Geiger's silence had no impact on the outcome of the trial, since Hollins was convicted without Geiger's testimony. Defense counsel also argued that if defendant had been prosecuted for obstructing justice or perjury, he would have received a sentence between 2 and 5 years' imprisonment or, if an extended-term sentence were imposed, up to 10 years' imprisonment and urged the trial court to impose a sentence of 2 years' imprisonment for contempt.

¶ 27    In allocution before the court in 2013, defendant apologized for "anything [he had] done as far as court-wise with this case." Defendant stated he did not testify because he could not remember any of the events regarding the case. The court found that defendant's refusal to testify was not openly contemptuous, but described defendant's refusal to testify as an "assault" on the criminal justice system. The court concluded that a lengthy sentence was warranted because defendant's conduct could have caused serious consequences in the underlying case. The court also considered defendant's young age and extensive criminal history of felony offenses. The court resentenced defendant to 10 years' imprisonment with day-for-day credit. The court was unsure of the effect the new sentence would have on defendant's release date. The clerk asked if defendant's sentence was consecutive, and the court responded "[w]ell, the sentence it was consecutive to is pretty much over. But it–yeah. The–all right." The court readmonished defendant of his appeal rights.

¶ 28     On April 25, 2013, the court received a letter from defendant. In the letter, defendant stated that the Department of Corrections had erroneously set his release date for June 20, 2015. Defendant argued, that with the credit for time served from July 20, 2009, his release date should be November 20, 2013.

¶ 29     After reviewing the recording of defendant's resentencing hearing, the court developed concerns that its order was silent regarding whether defendant's 10-year sentence was to run concurrently or consecutively to defendant's sentence in case No. 07-CF-385. Consequently, the court set the matter for a hearing.

¶ 30     At the beginning of the June 20, 2013, hearing, the trial judge indicated he caused some confusion by failing to specify whether defendant's sentence would be concurrent or consecutive. The court acknowledged that it suggested to defendant, off the record, that defendant could be released in late 2013. However, the court advised the parties that this underestimation resulted from the court's misunderstanding of the status of defendant's sentence in case No. 07-CF-385. The court incorrectly believed defendant had finished or was close to finishing that sentence in case No. 07-CF-385 at the time it imposed the 10-year contempt sentence in case No. 08-MR-518, the instant case.

¶ 31     The State argued that consecutive sentencing was mandatory because defendant was incarcerated for case No. 07-CF-385 when he committed the contemptuous conduct in case No. 08-MR-518.

¶ 32     The trial court concluded, as a matter of law, that it was required to impose consecutive sentencing. However, on June 20, 2013, the trial judge stated that, if the law did not mandate that the sentence in case No. 08-MR-518 would not begin until after the sentence in case No. 07-CF-385 was completed as a consecutive sentence, he would have made the 10-year sentence imposed on remand to be served concurrently because he thought defendant was a "different person" and had "changed" since the date of the original contempt sentence in 2009.

¶ 33     On June 20, 2013, the court advised defendant of his appeal rights and defense counsel made an oral motion to reconsider the 10-year consecutive sentence. The court denied the motion and defendant requested a notice of appeal.

¶ 34     The court directed the clerk to prepare a notice of appeal and informally told defendant, "[Y]ou can appeal the sentence of 10 years too. They might reduce it to time-served." Defense counsel asked to include that basis in the notice of appeal, but the State advised the court that more than 30 days had passed since the resentencing date and that basis had been forfeited. The court agreed, and the notice of appeal was limited to the consecutive sentencing issue.

¶ 35                                    ANALYSIS
¶ 36                                 I. Jurisdiction
¶ 37     In this appeal, Geiger raises one issue for this court to review. Specifically, even though the trial court reduced his 20-year sentence by half, Geiger contends the 10-year sentence for direct criminal contempt is excessive. The State responds that this court lacks jurisdiction to consider the propriety of the 10-year sentence and also lacks jurisdiction to reduce the sentence to time served. In support of this argument, the State asserts defendant forfeited review of the issue because the notice of appeal does not identify the April 15, 2013, order that imposed the sentence.

¶ 38       We begin by reviewing the unusual procedural posture of this case. Originally, the trial court imposed a 20-year sentence for contempt, which was ordered to be served consecutively to the 6-year sentence in case No. 07-CF-385. After remand from our supreme court, the court conducted a new sentencing hearing for contempt in this case (case No. 08-MR-518) on April 15, 2013. On remand, the court ordered defendant to serve 10 years' imprisonment for direct criminal contempt. Within the next few days, Geiger submitted a *pro se*, *ex parte* letter to the trial judge on April 25, 2013. After reviewing this *ex parte* communication, the trial court properly brought the *ex parte* letter to the attention of both parties.

¶ 39       Within 30 days of the court's April 15, 2013, sentencing hearing, the court *sua sponte* scheduled another hearing. The court reassembled the parties and received arguments regarding whether the 10-year sentence should be served concurrently or consecutively with respect to Geiger's 6-year sentence imposed by Judge Erickson in Kankakee County case No. 07-CF-385. Based on these events, we conclude the trial court did not enter a final judgment in this case until the date of the amended judgment order clarifying the consecutive nature of the 10-year sentence, which was dated June 20, 2013.

¶ 40       Defendant argues the 10-year sentence for contempt was grossly disproportionate to the nature of the offense. We review defendant's sentence for an abuse of discretion. *People v. Perez-Gonzalez*, 2014 IL App (2d) 120946, ¶ 34. "A court abuses its discretion when a sentence varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Id*.

¶ 41       Here, Judge Erickson found defendant's refusal to testify in Hollins' second murder case was an "assault" on the judicial system. Judge Erickson was uniquely qualified to make this observation for several reasons. First, Judge Erickson was personally present in 2000 when Geiger presented detailed testimony during Mason's criminal trial that implicated Hollins in the murders. According to Geiger's testimony against Mason, which was presented during Hollins' codefendant's jury trial before Judge Erickson, *Geiger* joined Hollins and a man named "Terry" at "203 South Elm," an address about five houses away from the location of the murders. Geiger testified before the jury in Mason's trial that Geiger personally witnessed Hollins pick up a shotgun. This version of events, described by Geiger under oath during Mason's trial, put both Geiger and Hollins in close proximity to the murder scene but placed the shotgun in Hollins' hands.

¶ 42       Thus, Judge Erickson was fully aware that Geiger had previously surrendered his fifth amendment rights concerning matters discussed on the record during Mason's trial. When Geiger initially refused to testify in 2008, Judge Erickson advised Geiger that Geiger's testimony was no longer privileged under the fifth amendment because Geiger waived his rights and gave statements to the police and previously testified at Mason's trial. Additionally, the judge told Geiger that the State offered him immunity for his testimony against Hollins on that date.

¶ 43       Further, Judge Erikson personally observed Geiger's demeanor when Geiger insisted he would not testify against Hollins in spite of the court's admonishments that the fifth amendment rights no longer applied. During Geiger's first sentencing hearing in 2009, the trial court found defendant seemed defiant when he refused to testify and that defendant's refusal to testify did not seem based on a fear of retaliation from Hollins or other codefendants. Based on those factors and Geiger's criminal history, Judge Erickson originally sentenced Geiger to 20 years' imprisonment to be served consecutively after completion of Geiger's 6-year sentence

imposed in case No. 07-CF-385, on July 18, 2007. We note Geiger did not challenge the consecutive nature of this sentence in the previous appeal. *Geiger*, 2011 IL App (3d) 090688.

¶ 44     Significantly, in 2013, Judge Erickson listened to Geiger change his explanation for his refusal to testify against Hollins in 2008. Originally, Geiger refused to testify in 2008 based on his fifth amendment right, but in 2013 Geiger told the court he refused to testify against Hollins because Geiger could not remember the events of March 18, 1999.

¶ 45     In addition, we note it is apparent from the record that Judge Erickson carefully read the decision of our supreme court prior to resentencing Geiger in 2013. *Geiger*, 2012 IL 113181. It is also clear Judge Erickson was aware of the "time served" option discussed in Justice Freeman's separate decision. *Id.* ¶ 36 (Freeman, J., specially concurring). Nonetheless, after carefully considering the language and directive of the supreme court, this jurist, who had been involved in proceedings involving this double homicide for more than a decade, from 2000 to 2013, resentenced Geiger to complete a sentence of 10 years' incarceration, rather than imposing a sentence of "time served" as of April 15, 2013.

¶ 46     Finally, Judge Erickson had another opportunity to reconsider the sentence when he reassembled the parties to address whether the law required the 10-year sentence to be a consecutive sentence. On this occasion, Judge Erickson stood firm. Had Judge Erickson felt the proper sentence for Geiger's misconduct should be less than 10 years' incarceration because it would remain a consecutive punishment based on the statutory scheme, he could have imposed a sentence of time served either on April 15, 2013, or later on June 20, 2013. It is significant to this court that Judge Erickson did not do so and ordered a 10-year sentence that must be served consecutively based on existing law.

¶ 47     We note, as defense counsel argued before the trial judge, had defendant been prosecuted for obstructing justice or perjury, he could have received an extended-term sentence of 10 years' imprisonment for perjury or obstructing justice based on his extensive criminal history of felony offenses. Upon our review of the second sentencing hearing after remand from our supreme court, we conclude that the 10-year sentence was not grossly disproportionate to the nature of the contemptuous act when considered in light of defendant's previous criminal history. For the reasons set forth above, we affirm the consecutive 10-year sentence imposed by Judge Erickson on June 20, 2013.

¶ 48                                  CONCLUSION

¶ 49     The judgment of the circuit court of Kankakee County is affirmed.

¶ 50     Affirmed.

¶ 51     JUSTICE LYTTON, dissenting.

¶ 52     I respectfully dissent from the majority's affirmation of defendant's 10-year criminal contempt sentence. While I agree that Judge Erickson was very familiar with this defendant and the role his testimony played in the trials of Joseph Mason and Javar Hollins, I do not agree that defendant's sentence represented the " ' "least possible power adequate" ' " to punish defendant. *Spallone v. United States*, 493 U.S. 265, 280 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 371 (1966), quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 231 (1821)). A contempt sentence is an exercise of the court's discretion; however, this discretion

is not unfettered. See *Bloom v. Illinois*, 391 U.S. 194, 206-07 (1968) (noting that the recurrent need to set aside criminal contempt punishments as unauthorized or too harsh demonstrated the "unwisdom" of vesting the judiciary with completely untrammeled power to punish contempt). In *Bloom*, 391 U.S. at 206-07, the Supreme Court observed that there had been a recurring necessity to set aside punishments for criminal contempt as too harsh and criminal contempt cases had evolved to mirror ordinary criminal cases with extremely serious penalties.[4] Our supreme court has expressed similar concerns in this case. *People v. Geiger*, 2012 IL 113181.

¶ 53　　　I believe that one way to limit this tendency is to use statutory sentences in similar criminal cases to assist trial judges in finding a reasonable sentence for the contempt offense. A direct criminal contempt charge based on a refusal to testify is comparable to the offense of perjury (720 ILCS 5/32-2 (West 2008)). See *United States v. Gracia*, 755 F.2d 984, 990 (2d Cir. 1985) (comparing contempt sentence for failure to testify to possible sentence for perjury); *United States v. Leyva*, 513 F.2d 774, 780 (5th Cir. 1975) (comparing contempt sentence for refusal to testify to possible perjury sentence); *In re Finding of Contempt Against Gardner*, 713 N.E.2d 346, 348 (Ind. Ct. App. 1999) (perjury comparison used in reduction of defendant's contempt sentence); see also *United States v. Patrick*, 542 F.2d 381, 393 (7th Cir. 1976) (holding a four-year criminal contempt sentence for failure to testify before the grand jury was proportionate to sentences imposed for the offenses of perjury and obstruction of a criminal investigation). In Illinois, perjury is a Class 3 felony, which carries a sentencing range of two to five years' imprisonment. 730 ILCS 5/5-4.5-40 (West 2008). Where appropriate, an extended-term sentence for perjury of 5 to 10 years' imprisonment may be imposed. 730 ILCS 5/5-4.5-40(a) (West 2008).

¶ 54　　　Here, defendant's 10-year contempt sentence was twice the length of the maximum nonextended perjury sentence. A trial court's power to sentence a defendant for contempt is not without limit. In an effort to better ensure the reasonableness of contempt sentences, I believe Illinois courts should be guided by the sentences applicable to criminal offenses that are analogous to a defendant's contumacious behavior. Criminal sentencing terms provide boundaries in which a court may craft an appropriate contempt sentence that does not run afoul of our supreme court's concerns. Applying this framework, I would reduce defendant's sentence to five years' imprisonment. Ill. S. Ct. R. 615(b)(4).

¶ 55　　　Generally, a trial court's sentence is subject to review for an abuse of discretion. *Geiger*, 2012 IL 113181, ¶ 27. However, the Supreme Court has advised that the punishment for contempt is guided by the doctrine that " 'a court must exercise "[t]he least possible power adequate to the end proposed." ' " *Spallone*, 493 U.S. at 280 (quoting *Shillitani*, 384 U.S. at

---

[4]Since the Supreme Court's observation, federal and state courts have continued to set aside lengthy contempt sentences. See *United States v. Gomez*, 553 F.2d 958 (5th Cir. 1977) (*per curiam*) (15-year criminal contempt sentence for refusing to testify before grand jury reduced to 2 years); *Leyva*, 513 F.2d 774 (35-year contempt sentence for refusing to testify before grand jury reduced to 2 years); *Gardner*, 713 N.E.2d 346 (11½-year contempt sentence for refusing to testify reduced to 3 years). In contrast, shorter contempt sentences for a defendant's refusal to testify have been upheld on appeal. See *United States v. Lach*, 874 F.2d 1543 (11th Cir. 1989) (upholding defendant's 42-month contempt sentence imposed on two separate contempt charges); *Patrick*, 542 F.2d 381 (defendant's four-year contempt sentence was not abuse of discretion). Defendant's 10-year contempt sentence is inconsistent with other jurisdictions that have addressed this issue.

371, quoting *Anderson*, 19 U.S. (6 Wheat.) at 231). Our supreme court echoed this sentiment in the *Geiger* decision when it admonished the courts of this state to be mindful that "[t]he contempt power is an extraordinary one that should be used sparingly and with the utmost sensitivity." (Internal quotation marks omitted.) *Geiger*, 2012 IL 113181, ¶ 25. Reference to criminal sentencing laws provides useful guidelines for courts to apply when considering criminal contempt sentences. Indeed, federal sentencing guidelines specifically reference criminal law sentences as a useful tool to help guide judges in the determination of an appropriate criminal contempt sentence. See U.S. Sentencing Guidelines Manual § 2J1.1 cmt. nn.1-2 (2011). Defendant's contumacious behavior was nonviolent and based on an honest and reasonable, albeit mistaken, belief that he had a fifth amendment right to remain silent and did not seriously hinder the State's ability to prosecute Hollins. See *Geiger*, 2012 IL 113181, ¶¶ 29-31. Although defendant's refusal to testify in a murder case was an affront to the judicial system, a 10-year contempt sentence does not represent the least possible power adequate to punish defendant. See *Spallone*, 493 U.S. at 276.