# Illinois Official Reports

## Appellate Court

***People v. Stephens*, 2017 IL App (1st) 151631**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NATHANIEL STEPHENS, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-1631 |
| Filed | December 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 01-CR-28427, 01-CR-28428; the Hon. Angela Munari Petrone, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Jessica D. Ware, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Burke and Justice McBride concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a bench trial in Cook County circuit court, defendant Nathaniel Stephens, who was 19 years old at the time of the offense in 2001, was convicted of the first degree murder and aggravated battery of a 4-month-old infant. For reasons that we discuss below, defendant was sentenced three times. At the third and most recent sentencing on April 16, 2015, defendant was sentenced to a total of 29 years with the Illinois Department of Corrections (IDOC). On this appeal, defendant raises challenges only to his 29-year sentence and asks this court (1) to reduce his sentence to the minimum, which is 26 years; (2) to remand for resentencing before a different judge; or (3) to order the reinstatement of his first sentence, which consisted of two concurrent 25-year sentences for his first degree murder and aggravated battery convictions. For the following reasons, we affirm.

¶ 2                                      BACKGROUND

¶ 3    In a prior opinion, we summarized the facts of this case as follows:

"During 2001, defendant was the sometime-live-in boyfriend of Trenatta Richardson, the mother of the four-month-old victim. On October 25, 2001, while defendant babysat her, the victim suffered a broken leg. The victim died from blunt trauma injuries on November 2, 2001, after being in defendant's care. On November 3, 2001, in a videotaped confession, defendant admitted to hitting the victim's head into a door frame three times and punching the victim in the ribs three times on November 2, 2001, to stop the victim from crying.

Defendant was charged in separate indictments with: (1) aggravated battery to a child for the incident on October 25, 2001, when the victim suffered a broken leg; and (2) first degree murder for the incident on November 2, 2001, when the victim died from blunt force trauma injuries." *People v. Stephens*, 2012 IL App (1st) 110296, ¶¶ 5-6.

¶ 4    In our prior opinion, we described in detail the evidence at trial, and we incorporate that opinion by reference. *Stephens*, 2012 IL App (1st) 110296, ¶¶ 38-60 (description of evidence at trial). Since there are no issues on this appeal regarding the evidence at trial, there is no need to repeat that description here.

¶ 5    As noted above, defendant was sentenced three times. After the bench trial, defendant was sentenced on August 30, 2005, to two concurrent sentences of 25 years with IDOC.[1] This is the initial sentence that defendant would now like restored.

¶ 6    At the sentencing hearing on August 30, 2005, the State entered into evidence two certified statements of conviction, for possession of a stolen motor vehicle and possession of a controlled substance with intent to deliver, and then stated that it had "nothing further in terms of evidence for sentencing."

---

[1]The trial court entered two sentencing orders on August 30, 2005. In case No. 01 CR 2842701 which concerned murder, the trial court entered a sentencing order stating that defendant's 25-year sentence for that offense shall "be concurrent with the sentence imposed in case number(s) 01 CR 28428021." Similarly, in case No. 01 CR 284201, which concerned aggravated battery of a child, the trial court entered a sentencing order stating that defendant's 25-year sentence for the aggravated battery offense shall "be concurrent with the sentence imposed in case number(s) 01 CR 28427001."

¶ 7    In mitigation, defense counsel argued that defendant was only 19 years old at the time of the offense and suffered from "mental retardation and mental handicaps" and thus deserved imposition of the minimum sentence. In response, the State argued that it had not "been established to any certainty that the defendant is, in fact, mentally retarded." The State observed that there were IQ tests in the record and conceded that the defense could argue diminished capacity but not mental retardation. The State also argued that this case marked defendant's fifth felony conviction, which, "at his young age" of 22, "makes him a career criminal." The State did not argue for a particular sentence or even a particular sentencing range but asked only for "an appropriate sentence."

¶ 8    The trial court then observed that defendant was convicted "of the offense of aggravated battery of a child which is a Class X offense with a range of sentence anywhere from six years to thirty years and also the offense of first degree murder on this child that carries with it a range of sentence beginning at 20 years."

¶ 9    As noted, after considering the factors in aggravation and mitigation, the trial court sentenced defendant to two concurrent 25-year sentences, with credit for time served.

¶ 10    After defendant received this sentence, the State argued on direct appeal that the trial court erred in sentencing defendant to concurrent sentences when consecutive sentences were statutorily required.[2] *Stephens*, 2012 IL App (1st) 110296, ¶ 64. On December 24, 2009, this court affirmed his convictions but agreed with the State that consecutive sentences were mandatory and that his concurrent sentences must be vacated.[3] *People v. Stephens*, No. 1-05-3365 (2009) (unpublished order under Supreme Court Rule 23). We explained: "When a trial court imposes concurrent sentences but consecutive sentences are mandatory, the sentencing order is void and the appellate court has the authority to correct the sentence 'at any time.' " *Stephens*, slip order at 27 (quoting *People v. Arna*, 168 Ill. 2d 107, 113 (1995)).[4] Concerning the resentencing, we instructed the trial court that "[i]t is within the trial court's discretion to determine the length of each sentence to be imposed, within the permissible statutory sentencing range." *Stephens*, slip order at 30. Our remand resulted in defendant's second sentence. Specifically on June 9, 2010, the trial court sentenced him to two consecutive 25-year sentences with IDOC.

---

[2]The State argued that consecutive sentences were mandatory pursuant to *People v. Arna*, 168 Ill. 2d 107, 112 (1995), which had held that consecutive sentences were mandatory if one of the offenses was a Class X offense and the defendant inflicted severe bodily injury. In the case at bar, both offenses were Class X offenses, and both inflicted severe bodily injury to the victim, thereby qualifying as triggering offenses for mandatory consecutive sentences. *People v. Causey*, 341 Ill. App. 3d 759, 773 (2003) ("first degree murder can serve as a triggering offense"); 720 ILCS 5/12-4.3(b) (West 2000) (aggravated battery of a child is a Class X felony).

[3]Defendant cites in his brief to this court both (1) the State's brief on direct appeal and (2) our Rule 23 order that decided the appeal, but he fails to include them in our record and fails to provide record citations to these documents in his brief. It is the appellant's burden to provide a sufficiently complete record to support his or her claims. *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 66.

[4]The void sentence rule set forth in *Arna* was later "abolish[ed]" by the Illinois Supreme Court in *People v. Castleberry*, 2015 IL 116916, ¶ 1. See *People v. McDaniel*, 2016 IL App (2d) 1141051, ¶ 4 ("*Castleberry* *** overturned *Arna*"). We discuss at length why this change does not affect the outcome of the case at bar. *Infra* ¶¶ 65-72.

¶ 11    However, the trial court issued this sentence without defendant or his counsel being present. *Stephens*, 2012 IL App (1st) 110296, ¶ 67. The entire proceeding consisted of the following statement by the trial court:

> " 'THE COURT: These are the cases of Nathaniel Stephens. The defendant is not in court. For both the cases the Appellate Court mandate has been issued and the mandate—and the mandamus, excuse me, shall be spread of record on each of the cases. The mittimus is corrected.
>
> Defendant sentenced to 25 years consecutive and it is nunc pro tunc to August 30th, 2005. Actually, let me phrase it this way: One case is 28427 and the other case is 28428. On 27 the sentence is 25 years Illinois Department of Corrections. On 28428 the sentence is 25 years Illinois Department of Corrections consecutive to 01 CR 28427. Both sentences are nunc pro tunc. Let me just add this little part too, on 28427, that sentence is on Count 3. And it will be off call.' " *Stephens*, 2012 IL App (1st) 110296, ¶ 121.

¶ 12    Subsequently, defendant filed a *pro se* postconviction petition, which was summarily dismissed. On the postconviction appeal, this court affirmed the dismissal of defendant's petition but vacated his two consecutive 25-year sentences due to the trial court's failure to hold a sentencing hearing. *Stephens*, 2012 IL App (1st) 110296, ¶ 123. We remanded for resentencing, observing that section 5-5-3(d) of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3(d) (West 2004)) provides in relevant part:

> " 'In any case in which a sentence originally imposed is vacated, the case shall be remanded to the trial court. The trial court shall hold a hearing under Section 5-4-1 of the Unified Code of Corrections which may include evidence of the defendant's life, moral character and occupation during the time since the original sentence was passed. The trial court shall then impose sentence upon the defendant.' " *Stephens*, 2012 IL App (1st) 110296, ¶ 123 (quoting 730 ILCS 5/5-5-3(d) (West 2004)).

¶ 13    Since it is this third sentencing that is at issue on this appeal, we describe it here in detail.

¶ 14    After we remanded the case a second time, it was assigned to a new trial judge pursuant to defendant's petition for substitution of judge. At the subsequent sentencing hearing held in 2015, the State did not call any witnesses but relied, in aggravation, on the seriousness of the offense and defendant's prior criminal history. Defendant's criminal history consisted of a total of five convictions, which were for the two convictions in the instant appeal, as well as three convictions for (1) possession of a stolen motor vehicle in 1999, (2) possession of a controlled substance in 2000, and (3) another possession of a controlled substance in 2001.

¶ 15    In mitigation, defendant called five witnesses: (1) Ewenell McCullough, a correctional agent with the Cook County sheriff's department; (2) Norlandi Young, a correctional agent at the Cook County jail; (3) Sheteila Allen, defendant's sister; (4) Melanie Porter, the mother of defendant's three children; and (5) Mary Porter, Melanie's mother and the grandmother of defendant's children.

¶ 16    Ewenell McCullough testified that he was a correctional sergeant with the Cook County sheriff's department and that he has worked at the Cook County jail for 24 years. McCullough was assigned for over a year to division one of the jail, where defendant was detained. The division one assignment was from "roughly" June 2013 through July 2014. During that time, defendant worked for McCullough cleaning up "the tier" and feeding the other detainees.

- 4 -

McCullough described defendant as follows: "He was always cooperative. I never had a problem with him. I never gave him a disciplinary. He was always respectful and did his job."

¶ 17    Norlandi Young testified that she was also a correctional sergeant with the Cook County sheriff's department, where she had been employed for 17½ years. Young had worked in division one for three years and had known defendant for about two years. During that time, defendant had worked "for the tier" where he would "[c]lean the showers, clean the day room, mop, sweep the floors." Young described defendant as "[v]ery respectful, never had any problems with him." To her knowledge, defendant had not had a disciplinary action or ticket issued against him since he had been in division one.

¶ 18    On cross-examination, Young was asked whether, of the 1200 detainees in division one, it was "fair to say that many are respectful?" Young responded: "It's not many." She explained that more detainees were disrespectful than respectful to the correctional officers. On redirect examination, Young testified that she would classify defendant's behavior as unusual and that, while tickets may be issued for many reasons including minor infractions, defendant did not have any tickets at the Cook County jail. Young testified that the Cook County jail was not an easy place to live and that inmates have altercations with each other but that she had never observed defendant in an altercation with anyone.

¶ 19    Sheteila Allen, defendant's sister, testified that she was 30 years old and had been employed for almost 10 years in housekeeping at the Fairmount Hotel. In school, defendant was in special education for a learning disability and had difficulty with reading and math and completing his homework. Her parents had told her that, when defendant was born, he had excess fluid on his brain. When defendant was a child, he had an unusually large head.

¶ 20    Allen testified that their mother and aunt shared a two-flat building and over 15 children lived there. Their mother was addicted to heroin and also used cocaine when Allen was five or six years old and continuing into Allen's teen years. Sometimes there was no food, and defendant "would go outside and do the things, like, maybe sell drugs or whatever to provide for us, to make sure that we ate" or had clothes or shoes. Although defendant received Social Security when he was a child, their mother received the money and would sometimes use it for her drug habit.

¶ 21    Allen testified that defendant had children who also had special needs and learning disabilities and who could not count well and were behind in school.

¶ 22    On cross-examination, Allen testified that defendant attended a regular Chicago public high school, from which he was expelled when he was arrested. When her parents lived together when she was younger, her family was close, and they went to a restaurant or movie once a month. Allen and her sisters and brothers did not have a good upbringing, and it was not "peaceful" due to heroin and cocaine use by her mother, sisters, and brothers.

¶ 23    On redirect, Allen testified that defendant was protective of their mother and considered it disrespectful to say bad things about her in public and, in particular, about her drug addiction.

¶ 24    Mary Porter testified that she was the mother of defendant's girlfriend and the grandmother of their three children. Porter first met defendant in 1997, when he was a teenager. When she first met him, she thought he was "slow" because "it just look like something, you know, was wrong with him." She "found out later, that something had happened to him when he was born." Since he had been in jail, defendant had called Porter twice a month because he felt like his own mother had deserted him. Porter paid for the calls. Defendant's children would spend

the night with Porter and speak to defendant when he called. During these calls, she told him to go to church and pray, and when he called back, he confirmed that he had gone to church. Porter stated that defendant was "very nice" and "very respectful" and that she never had "any trouble out of him."

¶ 25 Melanie Porter, the mother of defendant's three children, testified that she was 32 years old at the time of the hearing and that she first met defendant when she was 15 years old and they both attended the same high school. Defendant was in special education, and she was not. They had one class together, and defendant "couldn't catch on like the other kids," and she would try to help him. When Melanie[5] went to defendant's home, she observed defendant's mother and her friends in the kitchen smoking cocaine "rocks." Melanie was aware that defendant received Social Security disability checks when he was in high school.

¶ 26 Melanie testified that, as a result of her first pregnancy, she and defendant had twin boys and Melanie and defendant were trying to figure out how to support them. The payee for defendant's Social Security checks was his mother, and his mother would give defendant less than half of the money. Melanie would ask defendant to ask his mother for more of the money, but he did not want to ask for more. Before Melanie had children, she was aware that defendant and his siblings would often lack food due to the mother's drug problem, and Melanie would let them eat at her house. Sometimes defendant would call his father, who would come over and bring a couple of dollars and leave.

¶ 27 Melanie testified that defendant always took his mother's side, he respected his mother, and he never did anything to hurt her feelings. The same was true of his father, who also had a drug problem. When defendant had money, he helped Melanie and the children. In 2015, at the time that Melanie testified at the hearing, the twin boys were 15 years old, and their daughter was 14 years old. All three have learning disabilities, similar to their father.

¶ 28 On cross-examination, Melanie testified that, despite the problems, defendant had a close family, his needs were addressed, and it was a peaceful existence. On redirect, Melanie testified that sometimes they lacked electricity and heat. Their building was family-owned, but defendant's mother was not able to maintain it. In addition to defendant's mother, other relatives used drugs in the home. Melanie testified that their family life was peaceful because, despite all their problems, they still loved each other. As for her own employment, Melanie had a seasonal job at Macy's from August to this past January and she was also self-employed as a hairdresser.

¶ 29 During closing argument, the State reviewed the evidence presented at trial. The State conceded that defendant had a low IQ and diminished capacity and lacked "an ideal life growing up" but argued that it was still not "okay to kill a child a four—not a child, an infant, your Honor. It doesn't allow him to kill this four-month and 3-week old infant, because she's screaming while he's playing video games."

¶ 30 During closing argument, the defense observed, among other things, that the mitigation report submitted to the court showed that defendant had encephalitis when he was two years old and presently had an IQ of 64. Defendant asked the trial court to sentence defendant to the same sentence he had received originally, which was a total of 25 years. Counsel argued:

"DEFENSE COUNSEL: What sentence should he receive, Judge?

_____

[5]Since Melanie and her mother share the same name, we refer to her mother as Porter and to Melanie by her first name.

If you take into account who he is, Judge, which—and I might just note to the Court that, when Judge Moran sentenced [defendant], he sentenced him concurrently; and having the benefit of practicing in front of Judge Moran, that—that was not a mistake.

He knew exactly what he was doing.

He knew what the appropriate time was for this young man to spend in custody.

Judge, *you can duplicate that sentence here today*. It is possible with the sentencing range you have[.] ***

*What he was given, was appropriate*; and it is not possible for the Court to give him less. Otherwise, I would ask you for that; but it's not possible." (Emphasis added.)

After hearing oral argument, the trial court stated that it needed time to review the case.

¶ 31    On April 16, 2015, the trial court stated that it had reviewed all the records and summarized them for close to 20 pages. The trial court concluded:

"THE COURT: When left to care for a 4 month old who would not stop crying and interrupted his playing a video game, the defendant became angry and snapped. The testimony also was that he punched the baby in addition to banging the baby's head against the door frame.

The defendant said the crying was unlike any other he had heard from his own children. And I would suggest most likely because the child had a broken leg and fractured ribs from the defendant's actions to her just a week before.

I'm suspecting the child was in a great deal of pain. The defendant lied about what happened until confronted by police and faced with a polygram [*sic*] exam.

I do show that defendant has shown little responsibility for himself, his children or the 4 month old victim in this case. The defendant was not abused as a child even though his childhood was not ideal.

People close to the defendant suffered from drug abuse. The testimony was that one way the defendant chose to make money was to sell drugs. The defendant's sister with the same mother and father was steadily employed and did not have a criminal record.

The defendant made a choice to go another route. At age 19 he was already a multi-convicted felon. Sentences of probation did nothing to help him stay in school, get his GED, find employment or stay out of trouble.

Having said that I do not believe that the defendant planned his actions that caused such pain to 4 month old Destiny Nelson. I do believe that the defendant snapped like he said he did.

But the harm is so irreparable. Destiny Nelson is dead. And she can never be brought back. Judge Moran originally sentenced the defendant to 25 years, Illinois Department of Corrections total for first degree murder and aggravated battery.

When Judge Hill gave two, 25-year consecutive sentences that made the sentence 50 years Illinois Department of Corrections. Having considered all of the above, all of the mitigation as well as the aggravation, I do believe that the sentence of 50 years Illinois Department of Corrections is high for this offense.

I do believe that a lesser sentence is proper because the defendant did not intend to [*sic*] this action. However, I am considering all of the aggravation as just outlined above as well.

I believe the proper sentence here would be 23 years in the Illinois Department of Corrections for first degree murder, Count 3, case number 01 CR 28427.

And consecutive sentence of six years in the Illinois Department of Corrections for aggravated battery to a child on case number 01 CR 28429 which is a total of 29 years in the Illinois Department of Corrections followed by three years mandatory supervised release."

¶ 32    After announcing the sentence, the trial court asked defendant if he wanted to address the court. When defendant indicated that he did, the trial court stated: "All right. Please step up. And I'll see if that's going to change the sentence in any way. If it does, I'll give you a different sentence. I don't think it would affect it."

¶ 33    After hearing that his sentence was cut from 50 to 29 years, defendant thanked the court "for everything" and asked the Lord "to bless everybody that had something to do with it:"

"DEFENDANT: I just want to thank you for giving my attorney the time to put up litigation for me and for everybody that had something to do with the whole process of going on since I been here.

Thank you for your time that I have been here two years. Got a chance to visit my family, my father I haven't saw [*sic*] him since 2005. *** And I just want to thank you for everything. And god bless everybody that had something to do with it."

¶ 34    The trial court responded: "Mr. Stephens, that does not change my sentence. I think I made the appropriate sentence, Mr. Stephens. You don't have the 25 years that Judge Moran gave you. But you certainly don't have the 50 years that Judge Hill gave you. So you're going to be getting out. I don't think you're a bad person."

¶ 35    On April 30, 2015, defendant filed a motion to reconsider sentence, arguing (1) that defendant's 29-year total sentence was "excessive in view of the Defendant's background and the nature of his participation in the offense," (2) that the trial court "improperly considered in aggravation matters that are implicit in the offense," and (3) that the "sentence improperly penalized Defendant for exercising his right to trial." At the hearing on the motion on May 7, 2015, defense counsel stated: "And I have no argument. I just stand on the written motion." The trial judge stated as follows:

"THE COURT: I don't have the court file in front of me, I wasn't given a copy of anything from the Clerk's Office for today either; however, I can rule on this now.

I do remember this case. [Defendant] was given by another court a sentence of 50 years. Upon reconsideration[,] hearing the mitigation and arguments, [defendant] is sentenced to 23 years. I do believe it was not excessive, it was on the low end of the sentencing range. Respectfully, your motion is denied."

In the quote above, the trial judge's reference to a 50-year sentence "given by another court" was a reference to the *total* sentence imposed at the second sentencing by another judge. However, the judge's reference above to "23 years" was a reference to *only* the murder sentence imposed by her at the third sentencing. The total sentence imposed at the third sentencing, by this same judge, was 29 years, and as quoted above, the motion to reduce this total sentence was denied.

¶ 36    On May 7, 2015, defendant filed a timely notice of appeal, and this appeal followed.

¶ 38        On this appeal, defendant challenges his 29-year total sentence and asks this court (1) to reduce his total sentence to the minimum, which is 26 years, (2) to remand for resentencing before a different judge, or (3) to order the reinstatement of his first sentence, which consisted of two concurrent 25-year sentences for his first degree murder and aggravated battery convictions.

¶ 39        As the trial court observed prior to defendant's initial sentencing, defendant was convicted of (1) aggravated battery of a child, which is a Class X offense with a sentencing range of 6 to 30 years (730 ILCS 5/5-8-1(a)(3) (West 2002)), and (2) first degree murder with a sentencing range of 20 to 60 years (730 ILCS 5/5-8-1(a)(1) (West 2002)). Subsequently, this court found that consecutive sentences were mandatory under section 5-8-4(a)(i) of the Code (730 ILCS 5/5-8-4(a)(i) (West 2000)) and *Arna*, 168 Ill. 2d at 112. *Stephens*, slip order at 28 ("We vacate the concurrent sentences and remand to the trial court for the imposition of consecutive sentences.").

¶ 40        After this court's finding, the minimum total sentence that defendant could have received was 26 years, and he was sentenced to 29 years at his third sentencing. Defendant acknowledges on this appeal that any sentence imposed by the trial court during his third sentencing had to result in an increase from the 25-year sentence first imposed.

¶ 41        However, defendant's 29-year sentence was on the very low end of what he could have received. Since the maximum sentence for his murder conviction was 60 years (730 ILCS 5/5-8-1(a)(1) (West 2002) (for first degree murder, "a term shall be not less than 20 years and not more than 60 years)) and the maximum sentence for the aggravated battery charge was 30 years (730 ILCS 5/5-8-1(a)(3) (West 2002) ("for a Class X felony, the sentence shall be not less than 6 years and not more than 30 years")), the total maximum sentence that defendant could have received was 90 years. Thus, the aggregate sentencing range was 26 to 90 years at the third sentencing, and defendant received 29 years.

¶ 42        On this appeal, defendant argues, first, that his third sentence and his most recent sentencing hearing were unfair because the trial court did not properly consider mitigating evidence, such as his young age and troubled childhood, and because the court gave defendant the opportunity to speak only after first pronouncing defendant's sentence. As relief, defendant seeks a remand for resentencing before a different judge[6] who, we observe, could sentence defendant to 90 years with IDOC.

¶ 43        Although defendant filed a motion to reconsider his sentence, he did not object at sentencing. As a result, the State argues that his claim is forfeited for our review. To preserve a sentencing claim for appeal, a defendant must make a contemporaneous objection at the sentencing hearing and raise the issue in a postsentencing motion. *People v. Fort*, 2017 IL 118966, ¶ 18; *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). This principle encourages a defendant to raise issues before the trial court, thereby allowing the court to correct its own errors. *People v. Downs*, 2015 IL 117934, ¶ 13. However, even if a defendant has forfeited an issue by either failing to

---

[6]We observe that, prior to the sentencing hearing at issue, the trial court did grant defendant's petition for substitution of judge and the hearing proceeded before a different judge from the judge who had issued defendant's 50-year sentence. Thus, defendant is seeking the same relief, a second time.

object or make a motion, we may still review for plain error. See *People v. Jones*, 2016 IL 119391, ¶ 9; *Downs*, 2015 IL 117934, ¶ 14. "The plain error doctrine is a narrow and limited exception to the general rule of procedural default." *Downs*, 2015 IL 117934, ¶ 15.

¶ 44    The plain error doctrine applies when either (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the proceeding and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Clark*, 2016 IL 118845, ¶ 42; *Hillier*, 237 Ill. 2d at 545 (these two prongs are also applied "[i]n the sentencing context").

¶ 45    With respect to the second prong, although some of our supreme court's decisions have "equated second-prong plain error with structural error," our supreme court has more recently explained that it "did not restrict" second-prong plain error "to the [six] types of structural error that have been recognized by the [United States] Supreme Court." *People v. Clark*, 2016 IL 118845, ¶ 46. In the case at bar, defendant seeks reversal under both prongs.[7]

¶ 46    Under both prongs, the first step of plain error review is to determine whether any clear or obvious error occurred. See *Jones*, 2016 IL 119391, ¶ 10. " '[T]he term "plain" as used in the plain-error rule is synonymous with "clear" or "obvious"; error is not plain if the law was "unclear at the time of the trial but becomes clear on appeal because the applicable law has been clarified." ' " *People v. Fort*, 2017 IL 118966, ¶ 39 (quoting *In re M.W.*, 232 Ill. 2d 408, 431 (2009), quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

¶ 47    The defendant has the burden of persuasion on both the threshold question of whether there was a clear or obvious error and the question of whether he is entitled to relief as a result of it. *In re M.W.*, 232 Ill. 2d at 431.

¶ 48    In addition to plain error, defendant argues that his trial counsel was ineffective for failing to properly preserve this issue. Both the United States and Illinois Constitutions guarantee criminal defendants the right to the effective assistance of counsel. *People v. Hale*, 2013 IL 113140, ¶ 15 (citing U.S. Const., amends. VI, XIV, and Ill. Const. 1970, art. I, § 8). In general, the standard of review for determining whether an individual's sixth amendment right to effective counsel has been violated is *de novo*. *Hale*, 2013 IL 113140, ¶ 15. "A *de novo* review entails performing the same analysis a trial court would perform." *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 49    In determining whether defendant was denied effective assistance of counsel, we apply the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by the Illinois Supreme Court in *People v. Albanese*, 104 Ill. 2d 504 (1984). *People v. Cherry*, 2016 IL 118728, ¶ 24. Under the *Strickland* test, a defendant must show both that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Downs*, 2015 IL 117934, ¶ 13. Since a defendant must satisfy both prongs of the *Strickland* test, the failure to establish either prong bars his claim. *Cherry*, 2016 IL 118728, ¶ 24. As for the first prong in a claim of ineffectiveness, counsel's performance "must be evaluated based on the entire record."

---

[7]Although defendant's appellate brief states that he seeks reversal for this claim under both prongs, it makes no argument concerning the second prong.

(Internal quotation marks omitted.) *People v. Kirklin*, 2015 IL App (1st) 131420, ¶ 114; *People v. Flores*, 128 Ill. 2d 66, 107 (1989) ("[C]ounsel's performance must be evaluated [based on] the entire record and not on isolated instances of alleged incompetence called into question by defendant."). In the case at bar, defendant argues in his brief to this court that his trial counsel "submitted a plethora of mitigating evidence and mitigating witnesses" at the third sentencing hearing. In light of this concession, we do not understand how defendant could possibly satisfy the first prong of the *Strickland* test that his counsel's performance at the hearing was objectively unreasonable under prevailing professional norms.

¶ 50    Turning then to the first step of the plain error doctrine, we do not find that defendant has carried his burden to show clear or obvious error. A trial court's sentencing decision is reviewed only for an abuse of discretion. *People v. Geiger*, 2012 IL 113181, ¶ 27. "A sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Geiger*, 2012 IL 113181, ¶ 27 (quoting *People v. Alexander*, 239 Ill. 2d 205, 212 (2010)).

¶ 51    We do not find persuasive defendant's argument that the trial court committed a clear and obvious error and abused its discretion by allegedly failing to consider mitigating evidence, when the trial court meticulously discussed the record for over 20 pages, including the mitigating evidence presented by defendant, and then sentenced defendant to the very lowest end of the possible sentencing range. Although the trial court did not give factors such as defendant's age, troubled childhood, and conduct during incarceration the degree of deference that defendant believes they deserved, that is far different from saying that the trial court failed to consider them.

¶ 52    Defendant is correct that the trial court should have offered defendant an opportunity to speak prior to pronouncing sentence. Section 5-4-1 of the Unified Code of Corrections provides, in relevant part, that "[a]t the hearing the court shall *** afford the defendant the opportunity to make a statement on his own behalf." 730 ILCS 5/5-4-1(a)(6) (West 2014). In the case at bar, the trial court did offer defendant an opportunity at the hearing, although after it had already pronounced a sentence. The trial court did state that, if defendant's statement affected the court's determination, "I'll give you a different sentence."[8]

¶ 53    After defendant heard that his sentence was reduced from 50 to 29 years, defendant used his opportunity to speak, not to challenge his sentence, but to thank everyone involved in the proceedings.

¶ 54    As defendant acknowledges on this appeal, the failure to offer this opportunity prior to sentencing does not automatically require a remand for resentencing. *People v. Lenius*, 293 Ill. App. 3d 519, 543 (1997) ("The failure of the trial court to ask a defendant if he wished to make a statement is a technical error which does not require reversal."). As this court has previously observed, "the trial court's failure to invite allocution is a technical error that can be harmless,"

---

[8]Defendant stresses that the trial court followed this comment by stating: "I don't think it would affect it." "When determining the correctness of a sentence, the reviewing court should not focus on a few words or statements made by the trial court, but should consider the record as a whole. [Citation.] An isolated remark made in passing, although improper, does not necessarily require that defendant be resentenced." *People v. Cervantes*, 2014 IL App (3d) 120745, ¶ 44. In the case at bar, the transcript of the sentencing hearing shows that the trial court listened to what defendant stated and then concluded that defendant's words of praise and thanks did not adversely impact the trial court's determination.

particularly where "[d]efense counsel had ample opportunity to present mitigating arguments on defendant's behalf during the sentencing hearing." *People v. Boclair*, 225 Ill. App. 3d 331, 336-37 (1992). In the case at bar, where defendant acknowledges on appeal that his counsel "submitted a plethora of mitigating evidence and mitigating witnesses" on his behalf, where the trial court afforded defendant an opportunity to speak before finalizing the sentence, and where defendant used this opportunity to thank everyone for apparently cutting his sentence almost in half, we cannot find that the trial court's failure to offer defendant a prior opportunity to speak requires a remand for a fourth sentencing hearing.

¶ 55 Defendant's second claim on this appeal is that the trial court abused its discretion on remand by increasing defendant's sentence by four years over his initial sentence, where the State presented no new evidence in aggravation and the defense presented new evidence in mitigation, including evidence of his model behavior while incarcerated, his troubled childhood, and his mental health and lack of maturity at the time of the offense. For this claim, the relief defendant seeks is either a 3-year reduction by this court in his 29-year total sentence or a remand for resentencing before a different trial judge.

¶ 56 This claim, for the most part, is merely a repackaging of his first claim where he asserted that the trial court abused its discretion by not properly considering mitigating evidence, and it fails for largely the same reasons already discussed above. *Supra* ¶ 51.

¶ 57 In support, defendant cites *North Carolina v. Pearce*, 395 U.S. 711, 725-26 (1969), which found that the due process clause bars a sentencing court from imposing a longer sentence after a retrial, if the purpose of the longer sentence is to punish a defendant for his success on appeal.

¶ 58 Like defendant's first claim, this claim concerning *Pearce* is also forfeited for our review and may be reviewed only for plain error. We set forth the plain error doctrine above and will not repeat it here. In sum, we must, as a first step, find a clear and obvious error. For the following reasons, we can find none here.

¶ 59 First, whether you regard defendant's total sentence as a 4-year increase or a 21-year decrease depends on whether you measure it against his first or second sentence.[9] When defendant heard that the total for his second sentence was decreased by 21 years, he thanked "everybody that had something to do with" it, thanked the judge "for everything," and then stated that he hoped "everybody that had something to do with it" would be blessed.

¶ 60 Second, *Pearce* does not apply to defendant's case, as we explain below.

¶ 61 In *Pearce*, the United States Supreme Court held:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may

---

[9]The State argues that, under *People v. Carney*, 196 Ill. 2d 518 (2001), and related cases, the sentences imposed at defendant's third sentencing marked a decrease, even when measured against his first sentences, since his original 25-year sentence for murder was decreased to 23 years, and his original 25-year sentence for aggravated battery was reduced to 6 years. See *Carney*, 196 Ill. 2d at 531 (rejecting defendant's argument that, under *Apprendi*, consecutive sentences must be treated as a single sentence). However, *Pearce*, upon which defendant relies, focused on the total, aggregate sentence. *Pearce*, 395 U.S. at 714-15 (discussing the "longer total sentence" and the "aggregating" prison terms). Since we find defendant's reliance on *Pearce* misplaced for other reasons, we do not address this argument by the State.

unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant *occurring after the time of the original sentencing proceeding.* And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." (Emphasis added.) *Pearce*, 395 U.S. at 725-26.

We italicize above the portion quoted by defendant.

¶ 62    However, 20 years later, in *Alabama v. Smith*, 490 U.S. 794, 799 (1989), the United States Supreme Court discussed *Pearce* and stated: "we have limited its application." The *Smith* Court explained that, in the 20 years since *Pearce* had been decided, the Court had limited *Pearce*'s application to "circumstances *** in which there is a 'reasonable likelihood' [citation], that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Smith*, 490 U.S. at 799-800; *Texas v. McCullough*, 475 U.S. 134, 138 (1986) ("vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial"); see also *People v. Garcia*, 179 Ill. 2d 55, 74 (1997) ("*Pearce*'s prophylactic rule has been limited in its application to circumstances in which there is a reasonable likelihood that an increase in sentence is the product of actual judicial vindictiveness.").

¶ 63    In the case at bar, defendant makes no claims of actual vindictiveness on the part of the third sentencing judge nor can we find any evidence of vindictiveness in the record of the third sentencing hearing.[10] *Cervantes*, 2014 IL App (3d) 120745, ¶ 44 ("When determining the correctness of a sentence," we consider "the record as a whole."); see also *People v. Covington*, 395 Ill. App. 3d 996, 1009 (2009) (allegedly erroneous findings are insufficient reasons to believe that a trial court has a personal bias for or against a litigant). Thus, according to *Smith*, this case does not present the type of circumstances to which *Pearce* still applies. In addition, we observe that the trial court readily granted defendant's petition for substitution of judge before this hearing was held.

¶ 64    Defendant's third claim is that the trial court's imposition of a four-year increase in his aggregate sentence violated due process where the State did not present evidence of conduct "occurring after the time of the original sentencing." *Pearce*, 395 U.S. at 725-26. We already discussed this quote from *Pearce* above and explained why we do not find this argument persuasive.

---

[10]The State argues that our supreme court has found that there is no reasonable likelihood of vindictiveness by a trial judge against a defendant when it is the State who seeks a remand to impose consecutive sentences. *Garcia*, 179 Ill. 2d at 75. This argument would apply to the second sentencing where it was the State who sought the remand, but it does not apply to the third sentencing, which is the proceeding at issue before us.

¶ 65    Defendant's fourth claim is that, because the Illinois Supreme Court eliminated the void sentence rule in *People v. Castleberry*, 2015 IL 116916, ¶ 1, we should not have vacated his first sentence and remanded for his second sentencing and that, if we had not remanded for his second sentencing, we would not have remanded for his third sentencing and, therefore, we should vacate his third sentence and reinstate his first sentence. For the following reasons, we do not find defendant's argument persuasive.

¶ 66    In *Castleberry*, as in our case, the defendant received a sentence that, the appellate court found, did not conform to statutory requirements. *Castleberry*, 2015 IL 116916, ¶ 6. In *Castleberry*, as in our case, the appellate court vacated the sentence as void and remanded for resentencing. *Castleberry*, 2015 IL 116916, ¶ 6. However, unlike our case, before a second sentencing occurred in *Castleberry*, our supreme court reversed, abandoning the void sentence rule. *Castleberry*, 2015 IL 116916, ¶ 1. The supreme court in *Castleberry* held that the appellate court "had no authority *** to vacate the circuit court's sentencing order in response to the State's argument," and thus, the supreme court affirmed the trial court's one and only sentencing order. *Castleberry*, 2015 IL 116916, ¶¶ 25, 31.

¶ 67    Defendant argues that our facts are similar. In the case at bar, the State argued on direct appeal that the first trial court erred in sentencing defendant to concurrent sentences and, as a result, the trial court's 2005 sentencing order was void. In 2009, this court agreed, observing that, when a trial court imposes concurrent sentences when consecutive sentences are statutorily required, the resulting sentencing order is void and may be corrected at any time, pursuant to our supreme court's 1995 decision in *Arna*, 168 Ill. 2d at 113. *Stephens*, No. 1-05-3365.

¶ 68    In 2015, six years after our Rule 23 order, the supreme court in *Castleberry*, 2015 IL 116916, ¶ 1, abandoned the void-sentence rule from *Arna*. On this appeal, defendant argues that, as a result of our supreme court's 2015 *Castleberry* decision, this court was without authority in 2009 to remand for his second sentencing and thus we must reinstate his original 2005 sentences.

¶ 69    What defendant overlooks is that we vacated his second sentences—which totaled 50 years—at his request and remanded for a third sentencing. *Stephens*, 2012 IL App (1st) 110296, ¶ 120. By contrast, in *Castleberry*, there was only one sentencing, not three as in our case. Thus, in the case at bar, it is the validity and fairness of this third sentencing that is before us now.

¶ 70    Based on *Castleberry*, defendant asks this court, in essence, to vacate the 2009 and 2012 decisions of this court, as well as the third sentencing order of the trial court, and turn the clock back over 12 years to the first sentencing order in 2005.

¶ 71    However, in its subsequent *Price* opinion, our supreme court explained that the primary purpose behind *Castleberry* was to "preserv[e] the finality of judgments." *People v. Price*, 2016 IL 118613, ¶ 28. Based on *Price*, we do not believe it was our supreme court's intent to undo the finality of an eight-year-old appellate decision,[11] upon which both the parties and subsequent appellate and trial courts have relied, particularly when the result would be to reinstate a decades-dormant, statutorily invalid sentence.

---

[11]*Stephens*, No. 1-05-3365.

¶ 72 In essence, defendant argues that our 2009 order was void. However, our order was perfectly valid when issued and conformed to then-existing supreme court precedent. In *Price*, our supreme court held:

> "After *Castleberry*, *** a defendant may no longer rely on the void sentence rule to overcome forfeiture of a claimed sentencing error or to challenge a statutorily nonconforming sentence in perpetuity [citation]." *Price*, 2016 IL 118613, ¶ 17.

There is no dispute on appeal that defendant's third sentence conformed to statute, while his first sentence—the one he asks us to reinstate—did not. If, after *Castleberry*, a defendant may not "challenge a statutorily *nonconforming* sentence in perpetuity," then our supreme court did not intend *Castleberry* to become a vehicle by which a defendant could challenge as void an eight-year-old appellate decision, which ordered a statutorily *conforming* sentence, such as the one at bar. *Price*, 2016 IL 118613, ¶ 17. Thus, based on our supreme court's recent decision in *Price*, we do not find defendant's fourth claim persuasive.

¶ 73 In their briefs, the parties argue about whether the appellate court's decision in *People v. Cole*, 2016 IL App (1st) 141664, was wrongly or rightly decided, but that is not an issue we need to address in order to resolve the issues before us. In *Cole*, 2016 IL App (1st) 141664, the appellate court affirmed the trial court's imposition of consecutive sentences at a second sentencing because (1) there was no "increase" if one looked at the individual sentences instead of the aggregate[12] and (2) the appellate court's first order, finding the original concurrent sentences "void," had become the law of the case. However, whether *Cole* was rightly or wrongly decided, our facts go beyond those in *Cole*. Our case involves a third sentencing, not a second, and we vacated that second sentencing at defendant's request. We would need to vacate two appellate court decisions, including one in defendant's favor. Even if we were to accept defendant's argument that *Cole* was wrongly decided, we would still need to decide how far back we were willing to reach and how many decisions we were willing to vacate—in order to reimpose a legally incorrect sentence. More importantly, *Cole* was decided before our supreme court's decision in *Price*, and thus, our supreme court's subsequent decision in *Price* controls our decision here, not the earlier appellate court decision. Thus, we do not find defendant's fourth claim, based on *Castleberry*, persuasive.

¶ 74 CONCLUSION

¶ 75 For the foregoing reasons, we affirm defendant's conviction and sentence.

¶ 76 Affirmed.

---

[12]See footnote 8 *supra* for a discussion of case law concerning whether an increase is measured against the aggregate or individual sentences.