2021 IL App (1st) 192308-U

No. 1-19-2308

Order filed August 18, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 4601 |
| | ) | |
| SOLOMON HARRIS, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions and sentences for stalking and aggravated domestic battery by strangulation are affirmed because the trial court did not err in admitting text message evidence and appropriately considered the factors in aggravation and mitigation at sentencing.

¶ 2    Following a bench trial, defendant Solomon Harris was convicted of aggravated domestic battery by strangulation (720 ILCS 5/12-3.3(a-5) (West 2016)) and stalking (720 ILCS 5/12-7.3(a-3)(2) (West 2016)), and received concurrent prison terms of 11 and 3 years, respectively. He

appeals, arguing that his convictions should be reversed because the trial court erroneously admitted text message evidence, and that his sentence for aggravated battery by strangulation was excessive because the court failed to appropriately weigh mitigating factors, including his history of mental health problems. We affirm.

¶ 3 Defendant was charged by information with aggravated domestic battery (count I), domestic battery (count II), violation of an order of protection (count III), and stalking (count IV), following a series of incidents between November 4, 2016 and December 3, 2016. Prior to trial, the court granted the State's motion to admit proof of other crimes.

¶ 4 At trial, Tyra Owens[1] testified that she and defendant dated for four years and had a four-year-old daughter, Sameyah. On November 4, 2016, Tyra and Sameyah lived alone on the 4200 block of South Champlain Avenue in Chicago, though defendant had keys. That evening, Tyra awoke to the sound of someone using keys to open the front door. Shortly thereafter, defendant entered the bedroom and tried to kiss Tyra, who refused his advances. He went to the kitchen, and Tyra followed. An argument ensued, during which defendant choked Tyra, leaving a scratch on her neck. Defendant also pulled her to the floor by her hair, hit the back of her head with his fist, bit the back of her neck, and hit her with a plastic toy. Eventually, defendant entered Tyra's bedroom and fell asleep. Tyra did not contact the police that evening, but called her grandmother Mary Owens. Later that morning, Mary picked up Tyra and Sameyah, who stayed with Mary for two days. Tyra identified People's Exhibit Nos. 1 through 6 as photographs of her injuries.

---

[1] Because witnesses Tyra Owens and Mary Owens have the same last name, we will refer to them by their first names.

¶ 5    Tyra returned to the house on November 6, 2016, along with Mary and Sameyah. Previously, Tyra informed defendant via text message and telephone that he should leave the home and return his keys. Tyra entered and found defendant in a closet in her daughter's bedroom. She threatened to call the police, and he returned his keys and left.

¶ 6    Between November 6 and December 3, 2016, Tyra found notes, photographs, and bags of food outside of her home. One photograph had a note on the back in defendant's handwriting. Tyra also believed that defendant wrote the note because it referred to her as "boo" and "sweetie," names defendant used for her. Additionally, defendant appeared at Tyra's workplace with flowers on one occasion.

¶ 7    During the same period, Tyra received numerous text messages that she believed defendant sent because they "either reflected something that he had said in the past or something that he had done." The State entered certain text messages into evidence as People's Exhibit Nos. 12A through F, over defense counsel's objections. The exhibits are in the record on appeal.

¶ 8    Regarding People's Exhibit No. 12A, Tyra testified that she received the texts on November 10, 2016, from a phone number she did not recognize. The sender states, "I love you" and refers to himself using defendant's first name.

¶ 9    People's Exhibit No. 12B comprises text messages Tyra received from a different number she did not recognize on November 10, 2016. The sender states, "I love you and our baby."

¶ 10    People's Exhibit No. 12C depicts six text messages from a phone number Tyra believed defendant had used during their relationship. The sender asks to "come [and] shower," and refers to "our child."

¶ 11    People's Exhibit No. 12D consists of text messages sent from a phone number attributed to "Mark Jackson," a number that Tyra believed defendant used in the past. The sender addresses Tyra by name and states that he loves them "all." After Tyra responds, "Leave me alone," the sender replies he, Tyra, and their child should "go eat" and "talk" somewhere.

¶ 12    People's Exhibit No. 12E comprises additional text messages from the number labeled "Mark Jackson," which Tyra believed defendant sent because they read, "Don't believe everything you [hear]" and "I know you know I didn't do it." Tyra believed this referenced damage to her front door, which only a few people knew had been recently broken. During this text exchange, Tyra states that the sender put his "hands" on her, and the sender acknowledges that he did so.

¶ 13    Finally, People's Exhibit No. 12F depicts text messages dated November 23 and 24, 2016, also sent from a number Tyra believed defendant had used. Tyra believed defendant sent these messages because the sender asked for "a plate" at Thanksgiving. The sender refers to Tyra as "boo." In People's Exhibits Nos. 12C through 12F, the sender also refers to Tyra as "sweetie."

¶ 14    Early in the morning on November 24, 2016, Thanksgiving Day, Tyra awoke and saw defendant in the doorway of her bedroom. She asked how he entered, and he replied she left the door unlocked, which Tyra believed was "untrue." She told defendant to leave or she would call the police, which she did upon his exit. Tyra then went to the bathroom and discovered the window was open and a bottle of shampoo had fallen into her bathtub.

¶ 15    Tyra obtained an order of protection against defendant on November 29, 2016, which the State introduced into evidence. On December 3, 2016, Tyra saw defendant on a lot near her home and called the police. Later that day, she received additional text messages she believed defendant sent because the sender referenced an "altercation" between defendant and Tyra's brother.

¶ 16    Tyra testified to multiple incidents when defendant attacked her, including on December 26, 2012, when he choked and bit her; January 1, 2013, when he hit her in the face with a fist; May 27, 2013, when he swung a "metal tool" at her; July 22, 2013, when he kicked and punched her; and August 14, 2016, when he choked her again.

¶ 17    On cross-examination, Tyra testified that she did not seek medical attention following the November 4, 2016 incident, or call the police after finding defendant in the closet on November 6, 2016. She did not see defendant send the text messages or know what device the sender used.

¶ 18    Following Tyra's testimony, defense counsel objected to the foundation of the text messages. The court overruled the objection, noting that a text message can be authenticated via its content. The court further based its admission of the messages on specific phrases therein, explaining that People's Exhibit Nos. 12A and B contained defendant's name and the statement "I love you," People's Exhibit No. 12C referred to "our child" and "boo," People's Exhibit No. 12D referred to "our child," People's Exhibit No. 12E mentioned the sender "put hand[s]" on Tyra, and People's Exhibit No. 12F referred to Tyra as "boo."

¶ 19    Mary testified that Tyra called her on November 4, 2016, and as a result Mary picked up Tyra and Sameyah from Tyra's home. Mary saw bruises on Tyra's neck and arm. Mary was also present on November 6, 2016, when Tyra found defendant in the closet.

¶ 20    Chicago police lieutenant Terry Hoover testified that he responded to Mercy Hospital in Chicago on December 3, 2016, at approximately 11:45 a.m., where he served defendant with the order of protection. Defendant indicated that he understood the order.

¶ 21    The State entered a certified copy of conviction for defendant in case No. 13 DV 75818 for domestic battery from August 7, 2013.

¶ 22    Following closing arguments, the court found defendant guilty on all counts.

¶ 23    Defendant's presentence investigation (PSI) report showed that he was 36 years old in November 2016 and had two children. He had multiple prior convictions, including for manufacture or delivery of cocaine, possession of a stolen vehicle, theft, robbery, aggravated assault of a transit employee, and domestic battery. He reported involvement with the Department of Children and Family Services as a child, and experienced "physical, emotional and sexual abuse from his foster parents." He graduated high school from Sullivan House Alternative School in Chicago in 1999, and occasionally worked when not incarcerated. He took medication for "psychological problems" including "paranoia, manic depression and PTSD," and received treatment in prison for alcohol and drug addiction.

¶ 24    Defendant underwent a behavioral clinical examination prior to sentencing, after which Kristin Schoenbach, a licensed clinical psychologist, deemed him fit. Dr. Nishad Nadkarni, a forensic psychiatrist, also examined defendant and found him fit.

¶ 25    Prior to sentencing, the parties stipulated to Dr. Nadkarni's finding, and the court found defendant fit to be sentenced. The court then denied defendant's motion to reconsider its guilty finding, which argued, *inter alia*, that the court erred by admitting the text message evidence, and the matter moved to sentencing.

¶ 26    In aggravation, the State introduced Tyra's victim impact statement and defendant's certified copies of conviction for domestic battery, possession of a stolen motor vehicle, Class 2 felony robbery, and the Class 1 felony of manufacturing or delivery of a controlled substance. The State further represented that defendant was subject to Class X sentencing on count I for aggravated domestic battery by strangulation.

¶ 27    In mitigation, defense counsel requested the minimum sentence, arguing that defendant had a traumatic childhood, suffered from mental illnesses for which he received treatment in prison, and graduated from high school. In allocution, defendant stated that the allegations were not true, and requested "help" from the court to "get [himself] back to normal."

¶ 28    The court merged counts II and III into count I and imposed 11 years' imprisonment for aggravated domestic battery by strangulation (720 ILCS 5/12-3.3(a-5) (West 2016)), along with 3 years' imprisonment on count IV for stalking (720 ILCS 5/12-7.3(a-3)(2) (West 2016)), to run concurrently. In so finding, the court stated it found defendant's record aggravating, and the sentence was "necessary for *** rehabilitation" and "protection of the public." The court found mitigating that defendant had "a less than ideal childhood" and "a long history of drug abuse" which "may have contributed" to his conduct. The court denied defendant's motion to reconsider sentence.

¶ 29    On appeal, defendant first argues that the trial court erred by admitting the text messages contained in People's Exhibit Nos. 12A through F.

¶ 30    The decision whether to admit evidence is within the firm discretion of the trial court, and will not be reversed absent an abuse of discretion. *People v. Patterson*, 2014 IL 115102, ¶ 114. An abuse of discretion occurs when the trial court's decision was arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Santos*, 211 Ill. 2d 395, 401 (2004).

¶ 31    A text message is documentary evidence that must be authenticated to be admissible. *People v. Ziemba*, 2018 IL App (2d) 170048, ¶ 51. The proponent of the evidence need only provide a rational basis for the factfinder to believe the evidence is what the proponent purports it

to be. *People v. Watkins*, 2015 IL App (3d) 120882, ¶ 36 (citing *People v. Downin*, 357 Ill. App. 3d 193, 203 (2005)). Documentary evidence can be authenticated by direct or circumstantial evidence. *Id.* ¶ 37. "Circumstantial evidence of authenticity includes such factors as appearance, contents, substance, and distinctive characteristics, which are to be taken into consideration with the surrounding circumstances." *Id.* A party can authenticate a document based on its contents where the content would only be known by the alleged author, or at least to a small subset of individuals that includes the alleged author. *People v. Brand*, 2020 IL App (1st) 171728, ¶ 24.

¶ 32    Based on the record, we believe the trial court did not err in admitting any of the text messages to which defendant objects. He challenges six sets of text messages, People's Exhibit Nos. 12A though F.[2] In People's Exhibit No. 12A, the sender refers to himself using defendant's name and said says, "I love you." Similarly, the sender refers to "our baby" or "our child" in People's Exhibit Nos. 12B, C, and D. In People's Exhibit Nos. 12C, D, E, and F, the sender refers to Tyra as "sweetie." The texts in People's Exhibit Nos. 12D, E, and F were sent from phone numbers Tyra testified defendant had used. And finally, the texts in People's Exhibit No. 12E acknowledge that the sender put his "hand" on Tyra.

¶ 33    Thus, each exhibit contains details specific enough to provide a rational basis for the factfinder to believe defendant sent the messages. See *People v. Diomedes*, 2014 IL App (2d) 121080, ¶ 20 (explaining that where a document's contents reflect distinctive characteristics, authentication requirement may be satisfied). Defendant argues that the fact he and Tyra had a relationship and a child together was not known only to him or a small subset of individuals. A

---

[2] Defendant does not challenge People's Exhibit No. 14, the seventh set of text messages admitted at trial.

reasonable interpretation of the above evidence, however, is that no one besides defendant would use the pet names, refer to "our child" in a text message exchange with Tyra, or admit that he "put hand[s]" on Tyra.

¶ 34    Additionally, even if we were to find that the court erred in admitting text messages contained in People's Exhibit Nos. 12A through F, any error would have been harmless. On harmless error review, the reviewing court may determine whether (1) the error might have contributed to the conviction; (2) the other, properly admitted evidence overwhelmingly supports the conviction; or (3) the evidence admitted in error was cumulative or duplicative. *People v. Becker*, 239 Ill. 2d 215, 240 (2010). Here, Tyra testified sufficiently to establish the elements of each charge and was unimpeached. The testimony of one witness is sufficient to sustain a conviction if credible. *People v. Gray*, 2017 IL 120958, ¶ 36. Additionally, the photographic evidence of Tyra's injuries and the extensive evidence of prior abuse by defendant, which was admissible to show his propensity to commit domestic violence, provided overwhelming evidence of defendant's guilt such that the text messages had minimal impact on the convictions. See 725 ILCS 5/115-7.4 (West 2018).

¶ 35    Defendant next argues that his 11-year sentence for aggravated domestic battery by strangulation was excessive because the trial court did not adequately consider his mitigating factors.

¶ 36    In imposing sentence, the court must balance the seriousness of the offense with the defendant's rehabilitative potential. Ill. Const. 1970, art. 1, § 11. Because the factfinder is in a better position to weigh "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age," the reviewing court will not substitute its judgment for that

of the factfinder, even where it may have weighed the relevant sentencing factors differently. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The sentencing court will be presumed to have considered all relevant factors, including mitigating factors, absent a contrary showing from the record. *People v. Williams*, 2019 IL App (1st) 173131, ¶ 21. The sentencing court's decision is reviewed for abuse of discretion, and a sentence within the statutory range should not be altered unless it is manifestly disproportionate to the offense's nature or greatly varies from the spirit and purpose of the law. *People v. Geiger*, 2012 IL 113181, ¶ 27.

¶ 37    A sentencing court has wide discretion in rendering its sentence, and a sentence within the statutory range will be considered presumptively proper. *People v. Guerrero*, 2020 IL App (1st) 172156, ¶¶ 51-52. Aggravated domestic battery by strangulation is a Class 2 felony, but in this case, defendant qualified for Class X sentencing on the charge, which carries a range of 6 to 30 years. 730 ILCS 5/5-4.5-25(a) (West 2016).

¶ 38    Here, defendant's PSI report documented an extensive criminal record, including a previous domestic battery conviction. The PSI report also detailed his difficult upbringing and struggles with substance abuse and mental health. At sentencing, the State emphasized defendant's criminal record, while defense counsel argued that a minimum sentence was appropriate considering his difficult childhood and mental health issues, and that his education and job history suggested rehabilitative potential. The court imposed an 11-year sentence on aggravated domestic battery by strangulation and a concurrent 3-year term for stalking. In so finding, the court emphasized defendant's record and the need to protect society, while acknowledging mitigating factors in his upbringing and substance abuse.

¶ 39    On this record, we find that the trial court did not abuse its discretion in sentencing defendant. The 11-year sentence was within the applicable range, and thus presumptively proper. *Guerrero*, 2020 IL App (1st) 172156, ¶ 52. Defendant has not demonstrated that the sentence was manifestly disproportionate to the seriousness of his crime, as it was in the lower end of the Class X range. Nor is the sentence at variance with the spirit of the law, as the court expressly based it on the need to protect society from defendant and his criminal background, which included a previous conviction for domestic violence. These are valid sentencing considerations and were supported by the record. See *People v. Lavelle*, 396 Ill. App. 3d 372, 386 (2009); 730 ILCS 5/5-5-3.2(a)(3) (West 2016).

¶ 40    Defendant contends that the court did not sufficiently consider his mitigating factors, or explicitly reference his mental health. At the outset, we note that mental health conditions are not inherently mitigating. See *People v. Thompson*, 222 Ill. 2d 1, 42-43 (2006). A sentencing court, moreover, is not required to list all factors it considered. *Williams*, 2019 IL App (1st) 173131, ¶ 21. Instead, the court is presumed to have considered all relevant factors unless the defendant makes an affirmative showing otherwise, and defendant does not make this showing here. *Id.* Nor was the court required to weigh defendant's mitigating factors over the seriousness of his offense, as the record demonstrated he repeatedly harmed Tyra during their relationship, and experience with the criminal justice system did not deter him. See *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53. Accordingly, defendant's argument amounts to a request that we substitute our judgment for that of the trial court and rebalance the sentencing factors in his favor, which we may not do. *Stacey*, 193 Ill. 2d at 209.

¶ 41    Finally, we note that defendant references material in his brief that does not appear in the record below, including the Diagnostic and Statistical Manual of Mental Disorders: DSM-5. We may not consider such material for the first time on appeal. See *People v. Heaton*, 266 Ill. App. 3d 469, 476 (1994).

¶ 42    For the above reasons, defendant's convictions are affirmed.

¶ 43    Affirmed.