**NOTICE**
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

The 2023 IL App (4th) 221056-U

NOS. 4-22-1056, 4-22-1057, 4-22-1058 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 9, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| CORY W. CALHOUN, | ) | Nos. 17CF904, |
| Defendant-Appellant. | ) | 17CF908, |
| | ) | 18CF1041 |
| | ) | |
| | ) | Honorable |
| | ) | Amy C. Lannerd, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant has failed to establish he was denied the effective assistance of counsel
when counsel failed to challenge the excessiveness of his sentence in a posttrial
motion.

¶ 2    In February 2022, after the probation for defendant, Cory W. Calhoun, was
revoked, the circuit court sentenced defendant to three terms of imprisonment, one term to be
served consecutively to the two other concurrent terms, for a combined 17 years' imprisonment.
On appeal, defendant argues he was denied the effective assistance of counsel when his counsel
failed to include an excessive-sentence claim in his posttrial motion for reconsideration of his
sentence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4             In 2018, the State charged defendant with offenses involving multiple victims. In

Adams County case No. 17-CF-904, in March 2018, defendant was indicted for three counts of

aggravated home-repair fraud (815 ILCS 515/5(i)(a) (West 2018)). Specifically, the State alleged

defendant knowingly entered into written agreements with Paula Snow, who was over the age of

60, to perform tasks in her home. The tasks included the purchase and installation of a water

softener, water heater, and smoke and carbon-monoxide detectors. In Adams County case No.

17-CF-908, defendant was indicted for theft over $10,000 (720 ILCS 5/16-1(a)(2)(A) (West

2018)) from victim Michelle Wiemelt.

¶ 5             In December 2018, in Adams County case No. 18-CF-1041, defendant was

charged with two counts of theft over $500 (720 ILCS 5/16-1(a)(4)(A) (West 2016)) and one

count of home-repair fraud (815 ILCS 515/3(a)(1) (West 2016)). Specifically, the State alleged,

in March and April 2016, defendant knowingly obtained by deception $5000 from Kristina

Brown while agreeing to install "a 3[-]ton heat pump and coil, 20 feet of line, and a 30[-]amp

electrical disconnect" in Brown's home.

¶ 6             In January 2020, defendant entered a negotiated plea of guilty to one count each

of aggravated home-repair fraud (case No. 17-CF-904), theft over $10,000 (case No. 17-CF-

908), and theft over $500 (case No. 18-CF-1041). Defendant agreed to pay restitution for all

pending charges against him, including those in Adams County case Nos. 17-CF-668,

17-CF-902, 19-CF-302, and 17-CM-412, which were dismissed as a result of the plea agreement.

In exchange, the other counts and cases were dismissed, and the State agreed to a four-year term

of probation.

¶ 7             The State provided the factual bases for each offense to which defendant would

plead guilty. According to the factual bases, in case No. 18-CF-1041, deputies from the Adams County Sheriff's Office would testify they met with Kristina and James Brown at the Browns' residence in January 2018. The Browns told the deputies they contracted with defendant for home-repair services in March 2016. The Browns gave defendant $5000 to perform those services. Defendant dropped off some parts at their residence and began the work but did not complete it, despite multiple attempts by the Browns to get him to do so. Defendant returned no funds to the Browns.

¶ 8        Regarding case No. 17-CF-908, deputies would testify they met with Michelle Wiemelt in September 2016. Wiemelt reported she entered a written proposal for the purchase of a mobile home from defendant and for work to be performed by defendant on that home. Wiemelt gave defendant almost $14,000. When Wiemelt attempted to take possession of the mobile home, she was not allowed to do so. Despite Wiemelt's attempts to get defendant to uphold his end of the agreement, the work had not been performed and no money had been returned.

¶ 9        In case No. 17-CF-904, the deputies would testify they spoke to Paula Snow at the sheriff's office in May 2016. Snow, who was over the age of 60, entered into an agreement with defendant for home-repair services. One such service was for the purchase and installation of a water softener in the amount of $1500. Despite multiple attempts by Snow to contact defendant, the work was not done and Snow's money was not returned.

¶ 10       After a continuance following defendant's failure to provide the funds he agreed to pay for restitution at the time of his plea, defendant provided those funds and the circuit court accepted defendant's plea. He was sentenced to a total of 48 months' probation. The terms of defendant's probation included the mandate defendant (1) provide proceeds from a workers'

compensation lawsuit and a tax refund toward restitution, (2) prove he completed domestic-violence counseling, (3) pay $500 per month toward restitution, and (4) reside in Illinois. In the three suits involved in this appeal, defendant was ordered to pay $7150 to Snow, $13,900 to Wiemelt, and $5000 to Kristina Brown. In two of the dismissed cases, defendant was ordered to pay an additional $3900 to victims of a forged check and another home-repair fraud case involving a person over age 60.

¶ 11 In November 2020, the State filed a petition to revoke defendant's probation. The State alleged multiple violations of the terms of probation, including defendant's failure to provide information regarding a workers' compensation settlement, his full tax return, any paystubs for employment or the name of an employer, and adequate proof of his completion of domestic-violence counseling.

¶ 12 In January 2022, a hearing was held on the State's petition. At that hearing, probation officer Jennifer Fischer testified for the State. According to Fischer, defendant failed to make the court-ordered $500 monthly payments toward restitution, did not provide paperwork regarding the workers' compensation case, and provided no proof of employment. He once gave Fischer a phone number so that she could verify his employment. However, when Fischer called that number, defendant answered the phone. Defendant stated, "for some reason his boss's number was being forwarded to him." Fischer had informed defendant although he was permitted to work in Missouri, he must reside in Illinois. Defendant provided an Illinois address at the beginning of his probation. When Fischer went to verify that address, she found defendant had moved to live with his father in Quincy, Illinois. Defendant canceled the home visit to his father's Quincy residence before Fischer could verify defendant's residency. Defendant knew he was to complete domestic-violence counseling. Fischer received a copy of a certificate showing

- 4 -

he had completed a program. According to the certificate, defendant completed a course though the "St. Louis Men's Group." Fischer was unable to find the agency or the counselor whose name was on the certificate. Fischer asked defendant for additional information, but defendant did not provide it. Fischer had, on occasion, requested defendant meet her at her office. Defendant missed two appointments in February and March 2020. When appointments resumed in October and November, after the start of the pandemic, defendant missed two additional appointments. On cross-examination, Fischer verified conversations with defendant during which he stated he had trouble meeting his financial obligations due to the pandemic.

¶ 13    At the close of the hearing, the circuit court revoked defendant's probation and set the matter for sentencing.

¶ 14    Defendant's sentencing hearing was held in February 2022. The circuit court observed it received the presentence investigation report (PSI), which was prepared by Fischer. According to the report, defendant had made no additional payments toward restitution since the date his plea was accepted. Regarding his employment, defendant reported working for the trailer park where he lived from January to September 2021, but he was not paid for his work. Beginning in August 2020, defendant worked for a heating and air conditioning company for a few months. In March 2020, defendant reported working for Daniel Lagarce, but this employment was not verified. Defendant was not employed at the time the report was filed. Regarding his residency, in October 2020, Fischer contacted the city clerk in Frankford, Missouri, and learned defendant and his wife had lived in that town for over a year, having made a deposit on a rental house in May 2019.

¶ 15    In the report, Fischer further described defendant's reported alcohol and drug use. In March 2020, defendant reported he rarely consumed alcohol because he did not like it. He also

reported experimenting with cannabis, methamphetamine, and cocaine but stated had not used drugs for over 10 years. In February 2022, defendant reported drinking alcohol regularly, consuming a " 'couple cocktails every evening.' " Regarding methamphetamine, defendant reported using it in his 30s but stated he stopped in 2012. Defendant relapsed in 2019, reporting he used methamphetamine regularly and sometimes daily. Defendant further admitted occasionally abusing prescription pain medication. Defendant had been prescribed medication for anxiety and depression.

¶ 16          The PSI indicated a lengthy criminal history. In August 1993, defendant was convicted of tampering with a motor vehicle, for which he was sentenced to 12 months' probation and 9 months' periodic imprisonment. His sentence ran concurrently with a sentence for August 1993 offenses of "Forgery/Make Alter Document" and "Theft/Decep/Intent/<$300," for which he was sentenced to probation and ordered to provide restitution. In March 1994, defendant was charged for failing to return from furlough. He was also charged in April 1994 with theft of firearm and "Felon Possess/Use Weapon/Firearm." The probation for the August 1993 offenses was revoked in April 1994. Defendant was resentenced to concurrent terms of five years' imprisonment for the August 1993 offenses and for failure to return from furlough. He was also sentenced to four years for theft of a firearm. Defendant failed to comply with the order of restitution—over $6500 was turned over to collections. Defendant was released from prison in May 1998.

¶ 17          In July 1999, defendant was convicted of a February 1999 residential burglary and sentenced to 11 years' imprisonment and ordered to pay restitution. This conviction was reversed and the cause was remanded in October 2004. On remand, in January 2005, defendant pleaded guilty to attempted burglary and was sentenced to five years' imprisonment with credit

for time served. Defendant was also convicted of aggravated battery causing great bodily harm. His three-year sentence ran consecutively to the residential-burglary conviction. He was released from prison for that offense in October 2004, when the residential-burglary conviction was overturned.

¶ 18 Defendant was convicted of aggravated battery in a public place in August 2006 and was sentenced to four and a half years' imprisonment for that offense in August 2007. In May 2007, defendant was convicted of domestic battery. He was sentenced to 364 days in jail, and this sentence ran concurrently with the sentence for aggravated battery.

¶ 19 In March 2010, defendant was convicted of driving under the influence. He was sentenced to 12 months' supervision. The supervision was later revoked.

¶ 20 In October 2010, defendant was convicted of attempted methamphetamine delivery. In April 2012, he was sentenced to four and a half years in the Illinois Department of Corrections. He was released from prison in July 2014.

¶ 21 At the sentencing hearing, defense counsel argued the following:

"Your Honor, I'll start with some of the issues that [defendant] has that affect his life. By his own admission, substance abuse has been something that he has dealt with and that he has had to deal with for some time, and that will continue to be an ongoing issue for him. He's also dealing with some significant mental[-]health problems, and there's information in the PSI about the medication that he is prescribed for those issues. So in those two areas, certainly, he's got a lot to deal with on his plate.

He has managed to be apparently a good employe for some

period of time, something of a length of period of time with Budget Heating and Cooling given the work reference that they have provided and that is included in the record check in the [PSI].

[Defendant] also has completed his GED. He had some professional skills, and I suspect that that's why he was a good employee at Budget for a period of time. So he does have a lot that can be offered.

Also, these crimes, all three of them, are property crimes. He didn't cause any physical harm. He didn't threaten any physical harm. And that is a statutory factor in mitigation that the Court is to consider as well.

He has been in contact with the probation department. We have a whole series of e-mail exchanges between [defendant] and the probation department. Maybe there was a period of time in which he fell out of consistent contact, but it's not the case that he was not in contact.

Your Honor, [defendant] is asking that he be given the opportunity to turn things around. He is asking that he either be kept on his existing sentence or that he be sentenced anew to probation."

¶ 22 Highlighting the repeated failures to comply with terms of probation and supervision and the multiple terms of imprisonment defendant had served, the State asked for sentencing terms of 7 years, 7 years, and 10 years, to run consecutively.

¶ 23    The circuit court summarized its analysis before sentencing defendant to an aggregate term of 17 years' imprisonment:

"Court has considered the factual basis for the plea; the [PSI]; the history, character, and attitude of the Defendant; as well as the arguments presented today; as well as the Defendant's statement; and I've given due regard for the circumstances of the events. I've considered all of the statutory factors in aggravation and mitigation. Even if I only note certain of those factors or highlight them, I have considered all of those factors. I have also considered, as I do with any sentence, the sentencing goals for protection of the public, rehabilitation, deterring this type of crime from happening again. Sometimes there is a need to incapacitate, to punish, and to compensate the victim.

\*\*\*

In considering any sentence on 2018-CF-1041, he is extended-term eligible because of that prior felony conviction from 2010, that Class 3 felony, attempted meth delivery in 10-CF-604. Certainly the Court will note as far as aggravating factors the criminal history of the Defendant. The Court also notes the sentence is necessary to deter others from committing the same offense.

The Court also looks at the mitigating factors. And certainly we have a—we have victims in these cases. But I will

note when we think of physical harm, these are matters that do not involve that.

The Court also, as a mitigating factor, can consider whether or not the Defendant is particularly likely to comply with a term and period of probation. The Court cannot find this as a mitigating factor in this case ***.

The Court also does not find as a mitigating factor that the Defendant's criminal conduct was the result of circumstances unlikely to reoccur.

The Court also does not find as a mitigating factor, which the Court may have noted previously, that there had been a desire to compensate or an intention to compensate the victim for any issues on restitution. The Court does not necessarily find that to be a mitigating factor today.

The Court has considered—makes those notes given the prior sentence to probation. Court finds that a sentence of probation or conditional discharge would deprecate the seriousness of the crimes committed and a sentence to the Department of Corrections is necessary to protect the public. A sentence of probation or conditional discharge would be inconsistent with the ends of justice. I have given due consideration to the significant cost of confinement.

After considering all of these things, I hereby sentence the

Defendant in 17-CF-904 to a term of 6 years in the Illinois

Department of Corrections. In 17-CF-908, I hereby sentence the

Defendant to a term of 7 years in the Illinois Department of

Corrections. In the case of 2018-CF-1041, I hereby sentence the

Defendant to a term of 10 years in the Illinois Department of

Corrections, given that he is extended-term sentencing eligible on

those matters.

The Court has considered all the factors that the Court can

consider in exercising its discretion in mandating—or exercising

its discretion when considering consecutive sentencing. The Court

has determined that it will exercise that discretion when it comes to

Case Number 2018-CF-1041. I will allow the sentences in

17-CF-904 and 17-CF-908 to run concurrently, but they will run

consecutive[ly] with 2018-CF-1041. It would be an aggregate

sentence, then, of 17 years in the Illinois Department of

Corrections."

¶ 24        Defendant filed both a *pro se* motion to reconsider his sentence and a *pro se*

amended motion to reconsider his sentence. In November 2022, defense counsel filed a motion

to reconsider the sentence on defendant's behalf. In that motion, defendant argued the circuit

court, at the original sentencing hearing, was not provided information regarding defendant's

deteriorating health. Defendant also argued, in part, his term of probation was imposed "during

the height of the Covid 19 Pandemic which caused disruptions in the accessibility and

availability of many services, including those which Defendant failed to complete as part of his

term of probation."

¶ 25    After a hearing, the circuit court denied defendant's motion upon finding defendant had the opportunity to make the arguments at or before the earlier sentencing hearing.

¶ 26    This appeal followed.

¶ 27                              II. ANALYSIS

¶ 28    On appeal, defendant argues he was denied the effective assistance of counsel when postsentencing counsel failed to challenge the excessiveness of his 17-year sentence following the revocation of his probation in the motion to reconsider the sentence. According to defendant, had counsel argued his offenses were property crimes in which no physical harm was caused, the circuit court should have considered defendant's substance abuse as a mitigating factor, and the permissive consecutive sentence was not justified, there was a reasonable probability the court would have imposed a lesser sentence.

¶ 29    To succeed on a claim of counsel's ineffectiveness, a defendant must show (1) counsel's performance fell "below an objective standard of reasonableness" and (2) a reasonable probability exists the result of the proceeding would have been different but for counsel's error. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). For the purposes of this test, a probability is reasonable if it is "sufficient to undermine confidence in the outcome." *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1164 (1999). An ineffectiveness claim fails when a defendant cannot establish either factor. *People v. Simms*, 192 Ill. 2d 348, 362, 736 N.E.2d 1092, 1106 (2000).

¶ 30    Defendant has not established he was denied the effective assistance of counsel as he cannot establish the second part of the *Strickland* test: there is a reasonable probability the result of the hearing on the motion to reduce his sentence would have been different had

postsentencing counsel argued an excessiveness-of-sentence claim in his motion.

¶ 31    "[T]he purpose of a motion to reconsider sentence is not to conduct a new sentencing hearing, but rather to bring to the circuit court's attention changes in the law, errors in the court's previous application of existing law, and newly discovered evidence that was not available at the time of the hearing." *People v. Medina*, 221 Ill. 2d 394, 413, 851 N.E.2d 1220, 1230-31 (2006). Defendant is not arguing a change in the law or newly discovered evidence supports the reconsideration of his sentence. Instead, defendant's request for a reconsidered sentence is grounded in a contention the circuit court erred in applying existing law and postsentencing counsel failed to bring that error to the court's attention. Thus, to prove postsentencing counsel was ineffective, defendant need establish a reasonable probability the court would have found it misapplied existing law and granted defendant's motion to reduce his sentence.

¶ 32    Defendant presents a list of arguments which he contends postsentencing counsel should have argued before the circuit court in a motion to reduce his sentence as reasons his aggregate sentence should have been reduced: (1) the crimes were nonviolent, (2) consecutive sentences are rarely appropriate, (3) a lengthy sentence was not necessary to deter others, (4) defendant's drug addiction should have been considered in mitigation, and (5) defendant's physical and mental health should have been presented in the context of an excessiveness claim.

¶ 33    For the most part, defendant's contentions amount to a request for a reweighing of sentencing factors and a contention, had counsel requested as much, there is a reasonable probability the circuit court would have reduced his sentence. At sentencing, the court knew defendant's crimes caused no physical injury and defendant suffered from drug addiction and mental-health disorders. A reweighing of the statutory factors is not the purpose of a motion to

reduce sentence. See *id.* ("[T]he purpose of a motion to reconsider sentence is not to conduct a new sentencing hearing.").

¶ 34 There appear to be three arguments regarding the circuit court's alleged misapplication of the law. The first is the argument the court erred by imposing a consecutive sentence under section 5-8-4(c)(1) of the Unified Code of Corrections (730 ILCS 5/5-8-4(c)(1) (West 2022)). However, section 5-8-4(c)(1) permits the imposition of a consecutive term if "the nature and circumstances of the offense and the history and character of the defendant" give rise to the opinion "consecutive sentences are required to protect the public from further criminal conduct by the defendant." *Id.* The case law establishes a sentencing court need not articulate the exact words of the statute, but it must appear from the record the sentencing court believed the consecutive terms were necessary to protect the public. *People v. Jones*, 232 Ill. App. 3d 1083, 1087, 598 N.E.2d 380, 384 (1992). Here, the court expressly found the circumstances existed to justify imposing consecutive sentences. The record supports that conclusion. There is no reasonable probability the court would have found it misapplied existing law in imposing the consecutive sentence.

¶ 35 The second is defendant's argument the circuit court failed to consider his drug use as a mitigating factor. There is no requirement in Illinois a sentencing court consider substance abuse as a mitigating factor. The Unified Code of Corrections does not list drug addiction as either an aggravating or mitigating factor. See 730 ILCS 5/5-5-3.1(a), 5-5-3.2(a) (West 2022). The Illinois Supreme Court has held "a sentencing court is not required to consider drug addiction as a factor in mitigation." *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 99, 205 N.E.3d 812 (citing *People v. Mertz*, 218 Ill. 2d 1, 83, 842 N.E.2d 618, 663 (2005)). In fact, a sentencing court may consider drug addiction as an aggravating factor "if the addiction causes

- 14 -

additional future unpredictability and criminal behavior or a low potential for rehabilitation." *Id.* The record shows the court was aware of defendant's drug use. The PSI described it, and defense counsel argued it at the sentencing hearing. We presume the court was aware of the law and its purview to consider substance abuse as a mitigating or aggravating factor. See *People v. Smith*, 176 Ill. 2d 217, 260, 680 N.E.2d 291, 314 (1997) ("[W]here *** the trial court is the sentencer, it is presumed to know the law and apply it properly, and its decision regarding sentencing will be presumed to be proper absent an affirmative showing of error."). Here, there is no affirmative showing of error. There is thus no reasonable probability the court would have reduced defendant's sentence on this basis.

¶ 36　　　　Defendant further contends his 17-year sentence is " 'manifestly disproportionate to the nature of the offense' " and " 'greatly at variance with the spirit and purpose of the law.' " (quoting *People v. Geiger*, 2012 IL 113181, ¶ 27, 978 N.E.2d 1061 (providing the bases upon which a sentence will be found to be an abuse of discretion)). Illinois law requires sentences "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11; see *People v. Clemons*, 2012 IL 107821, ¶ 37, 968 N.E.2d 1046. We find no misapplication of the mandate a sentence be proportionate to the offense. The State requested an aggregate sentence of 24 years. Defendant was sentenced to 17 years. Given defendant's lengthy criminal history, his repeated failures at rehabilitation, and the number of his victims, including the age of at least one of them, a lengthy sentence was justified. See generally *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19, 143 N.E.3d 794 (stating circuit courts have broad discretionary authority, entitling their sentencing decisions to great deference). As there is no error, there is no reasonable probability the circuit court would have found the sentence disproportionate one month after imposing it.

¶ 37                              III. CONCLUSION

¶ 38          We affirm the circuit court's judgment.

¶ 39          Affirmed.